## MARVIN *vs.* TITSWORTH et al.

### APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard October 20, 1859.]　　　　　　　[Decided January 4, 1860.

*Trusts—Mortgages—Estoppel—Court Commissioner—Evidence—Public Land.*

Where S. was indebted to C. and made a trust deed of lands to F., conditioned, that if S. paid his indebtedness to C. by a certain day, then F. should reconvey the lands; but if S. did not pay C., then F. should advertise and sell the lands, pay C. and return the surplus money to S.: Held, that this deed could not be regarded or sustained as a mortgage, nor could it be foreclosed by advertisement and sale under the statute.

A mortgage is the conveyance of lands by a debtor to his creditor, as a pledge or security for the payment of a debt, and to become void on payment.

A deed to a trustee conditioned that if the grantor did not pay a debt due from him to a third party, then the trustee should advertise and sell the lands, pay the debt, and return the surplus money to the grantor, does not constitute a mortgage. The trustee is the mere agent of both parties, and such a trust being prohibited by our statute, the legal title remains in the grantor.

The test whether a conveyance is a mortgage, or a trust, is to be determined by the question, whether the trust is to be executed by the creditor or a third party; if by the former, it is a mortgage; if by the latter, a trust.

A conveyance to a trustee conditioned, that if the grantor does not pay a debt due from him to a third party, the trustees should advertise and sell the lands, pay the debt and return the surplus money to the grantor, was not authorized by chap. 57, § 11, R. S., 1849, authorizing the creation of express trusts to sell lands for the benefit of creditors, because the conveyance was conditional and not absolute, and provided for a reconveyance to the grantor, instead of an absolute sale for the payment of the debt.

A sale of lands, without the aid of court of equity, was made by the trustees named in a conditional deed of trust, which was not authorized by law: Held, that the purchaser acquired no title under such sale, against the grantor in the deed or his assigns.

A judgment in a partition suit, where the proceedings were regular, under the statute, is conclusive as to the title of the premises, as against all who are made parties by name; and where the proceedings are against "unknown owners," as against all the world.

A county judge in the exercise of the power of a circuit judge at chambers, may make the necessary orders in a suit of partition.

Courts will take notice of the legal subdivisions of sections without a designation of boundaries to lands, by posts, stones, or other monuments.

This was an action commenced by David M. Marvin against Abram Tittsworth, John D. Titsworth, Rudolph Titsworth, William Dunn, Francis Clark and L. C. Paine Freer, to recover possession of lands. The complaint contains the following allegations: That on the 24th day of January, A. D. 1850, William B. Sanford was seized in fee of the lands described in the complaint, and that on the same day he made and delivered to the defendant, L. C. Paine Freer, a mortgage on the same premises, reciting among other things, that he was indebted to the defendant Clark in the sum of $402 11, as expressed in three promissory notes constituting that amount. That to secure it, he granted, bargained and sold unto L. C. Paine Freer, the premises upon trust, that if Sandford should fail to pay the notes at maturity, or either of them, it should be lawful upon demand of Clark, for Freer to advertise the premises for sale, in any newspaper published in the county of Racine, for thirty days; and then sell them in the city of Chicago in the state of Illinois, to the highest bidder for cash, with all the rights and equity of redemption of Sandford, and to execute a deed to the purchaser in the name of Sandford, and from the proceeds to pay the expenses of the sale, and all liens and encumbrances on the lands and the notes, and render the surplus to Sandford; and upon the further trust that, after the notes should be paid, to reconvey the premises to Sandford at his costs.

That on the 7th day of May, 1852, Sandford conveyed an undivided half of the premises in fee, to the plaintiff. That previous to the last sale, Sandford had made payments to apply on the notes to the full amount thereof, with interest; that the plaintiff has often applied to the defendants to adjust and settle the balance on the notes, and they have refused so to do; that they claim to have acquired some claim or interest in the mortgage, or in the premises; that defendants Titsworth and Dunn claim now, and have for four or five years past, to own the premises under a deed from Freer as his attorney, bearing date January 29, 1853, and which recites that Sandford had failed to pay the notes; that Titsworth and Dunn were legal holders of the notes, and there was due thereon $325, and Titsworth and Dunn had demanded a sale of the premises under the mortgage, and the premises had been duly advertised for sale, as required by the mortgage; that Freer did, on the 4th day of August, 1852, sell the same at the door of the court house in the city of Chicago, at pub-

lic vendue, to Titsworth and Dunn, they being the highest bidders therefor. That the plaintiff had no notice of the sale; he therefore demands that an account be taken of the amount due the defendants, and that on payment of the sum the premises stand redeemed, and the mortgage be deemed satisfied, and the deed from Freer to Dunn and Titsworth be deemed to be void, and that Freer be decreed to reconvey the premises to the plaintiff, and for general relief.

To which the defendants answer in substance as follows: They deny that William B. Sanford, on the 24th day of January, 1850, or at any time, executed any mortgage to the defendant, L. C. Paine Freer; but admit, that on that day he executed to him a deed of trust, empowering him to convey all his interest in the premises, including all equity of redemption, in case Sandford should make default in the payment of the promissory notes mentioned in the complaint, or any of them. The defendant Clark answers, that after the making and before the maturity of the notes, he transferred them by endorsement to the defendants, the Titsworths and Dunn, partners in business at Chicago, and that he has no interest therein.

The defendants further answer jointly, and deny that Sandford has paid the amount due upon the promissory notes, and allege that at the time of the sale of the premises, $324 was due and unpaid; that upon such default Titsworth & Co., the legal holders of the notes demanded of Freer that the premises should be sold in pursuance of the deed of trust, to satisfy the notes. The defendant Freer, answering for himself, alleges that upon such demand, he proceeded to advertise the premises in the Racine Advocate, a newspaper published in the city and county of Racine, for thirty days previous to the 4th day of August, 1852, and on that day sold the same at the city of Chicago, Illinois, to Titsworth and Co., and executed and delivered to them a deed thereof in the name of William B. Sandford, according to the terms of the deed of trust. The defendants deny that Sandford, or any person or persons claiming under him, has or had any equity of redemption in the premises after the sale, and aver that such sale vested in Titsworth & Co. an absolute estate in fee simple.

The defendants, Titsworth & Co., allege that they are owners in fee simple and are in possession of 72.24 acres of the premises; and that they claim the same by virtue of a final decree of partition made by the circuit court for the county

of Racine, at a special term, on the 15th day of August, 1856, between them, and the plaintiff, and one Luther, which decree remains in full force.    The defendants ask that the complaint be dismissed with costs.

The plaintiff demurred to the answer for insufficiency, for the reason that it does not state facts sufficient to constitute a defence in the action, and that it does not appear from the answer that the circuit court for the county of Racine had jurisdiction of the cause and parties therein mentioned.

The action came on to a hearing at a circuit court on the 18th day of April, 1859, before the Hon. David Noggle, circuit judge, who decided for the plaintiff and against the defendants, as follows :

" This action having been brought to a hearing, and tried upon the issues of law, arising by reason of the demurrer to the amended answer of the complaint therein, and counsel for the respective parties having been heard thereupon, and due deliberation having been had by the court thereon.

" Judgment is ordered by the court in favor of the plaintiff upon said issues, with costs.

" And it is further ordered and adjudged that it be referred to L. B. S. Miller, Esq., to take the testimony and state the amount of balance due upon the promissory notes mentioned in the complaint in said action, over and above the value of the rents and profits of the premises also mentioned in ﹐said complaint, and that he report the same, with the testimony taken by him to this court with all convenient speed.

" And it is further ordered and adjudged, that upon the coming in and confirmation of such report, the plaintiff's costs and disbursements in this action, be deducted from the amount reported due upon said notes, and that the plaintiff may then pay to the defendants' attorneys, or the clerk of this court, the balance of the amount remaining unpaid on said notes as reported, and thereupon that the premises mentioned in said complaint, stand fully redeemed and discharged from the mortgage or trust deed mentioned in said complaint, and from the operation and effect thereof, and from all proceedings thereon in pursuance thereof, subsequent to its date, and that the sale mentioned in said complaint, by the defenddant Freer, and his deed of said premises to the defendants Titsworth and Dunn, be adjudged null and void, and that the defendants release and convey the premises to the plaintiff, and that he be let into possession of said premises, on .

production of a certified copy of this judgment, and proofs by affidavit of the payment of the balance of said notes as aforesaid."

From which judgment the defendants appealed.

*Paine & Millett*, for the appellants.

1. The deed of Sandford to Freer, vested in the latter an estate in fee simple, subject to no conditions whatever, except the trust therein named. Rev. Stat., 1850, chap. 57, § 16.

2. The sale of Freer, the trustee, transferred to the appellants; absolutely and unconditionally, all the estate that Sandford ever had in the premises, divested of all equity of redemption in him, his heirs or assigns. *Sampson vs. Pattison*, 1 Hare, 533; *Bank Metropolis vs. Gutschenk*, 14 Peters, 19; 1 Hill. on Mort., 358.

3. The decree in partition, allotting the undivided portions of these premises to the respective owners in severalty, being rendered by a court of competent jurisdiction concludes the parties, and cannot be impeached collaterally. Rev. Stat. of 1850, chap. 108, § 31; *Kane vs. Parker*, 4 Wis., 123; *Sheldon vs. Newton*, 3 Ohio St., 494; *Vorhees vs. Bank U. S.*, 10 Peters, 449; *Thompson vs. Tolime* 2, id. 165; *Grignon vs. Astor et al.*, 2 How., 335; *Piatt vs. Hubbell*, 5 Ohio, 217; *Dalney vs. Manning*, 3 id., 321.

*C. S. Chase & Judd*, for the respondent.

1. The instrument from Sandford to Freer, set out in the pleadings, purporting to be a deed in trust, is, in fact, and in law, a mortgage. *Rogan vs Walker et al.*, 1 Wis. R., 527; *Lawrence et al. vs. Farmers' Loan and Trust Company*, 3 Kern., 200; Willard's Eq. Jur., 426, 427, 428-9.

2. The instrument being a mortgage, it could be foreclosed so as to cut off the plaintiff's equity of redemption, only by advertisement and sale in the manner pointed out by our statute, or by a direct action upon it in the circuit court, in which the plaintiff should have been made a party. R. S., 1849, 619, § 1; id., 620, 621, 622; R. S., 1858, 894, § 1; id., 896, 897, 898.

3. The pretended sale, without notice to the plaintiff at Chicago, was a fraud upon him, and is, therefore, void.

4. The plaintiff being a subsequent purchaser of the premises is entitled to his equity of redemption on payment of the balance unpaid on the mortgage.

5. The second defense set up in the amended answer does

not state facts sufficient to constitute a defense to the action. It does not allege that a suit or action was commenced by the plaintiffs therein, against the defendants therein, nor any other facts giving the Court jurisdiction of the parties or cause, nor that the court had jurisdiction to make an order or decree therein. The order for the publication of notice to the absent defendants, was made by a county judge or court commissioner, and not by the court or a judge thereof, and is, therefore, void. The facts authorizing such an order, should have been made to appear to the court by affidavit, and the court, or a judge thereof, not a county judge or court commissioner, if satisfied with such proof, could have granted such order. R. S., 1849, 571, § 11; R. S., 1858, 145, § 11.

6. The proceedings and decree in partition, if they were otherwise in accordance with the statute, are in no respect a bar to this action. The question of title was not tried, nor does it purport to have been tried. A suit in partition has never, it is believed, been held to dispose of or settle the title; and certainly not unless the statute had been strictly complied with; it is conclusive only as to the number and extent of the parts into which the premises have been divided. The office of an action in partion is to separate the estate in a given case, between the apparent owners, leaving the question of title to the different parts, to be tried in a proper action.


*By the Court*, DIXON, C. J.   The nature of the instrument executed by Sandford to Freer, on the 24th of February, 1850, was a point of much controversy on the argument. On the part of the respondent it was contended, on the authority of *Lawrence vs. Farmers' Loan and Trust Company*, 3 Kern., 200, and the cases there cited, that it was a mortgage; and never having been foreclosed, either in equity or by advertisement, under the statute, a right of redemption still remained in the respondent, as the assignee of Sandford. It was upon this theory that the suit was commenced. On the part of the appellants it was insisted that it was a trust deed, creating a trust authorized by the first subdivision of section 11, chap. 57, R. S., 1849; and that both by the sale made by Freer, the trustee, at Chicago, on the 4th of August, 1852, and

by the operation of section 16, of the chapter above referred to, an absolute estate was vested in the appellants. In many respects it partook of the nature of both; yet we are clearly of opinion, that it cannot be regarded as a mortgage.

A mortgage is defined to be the conveyance of lands by a *debtor* to his *creditor*, as a pledge or security for the payment of a debt, and to become void on payment of it. The creditor in this case, and party for whose benefit the security was taken, was Clark. Freer had no interest whatever in the matter. He was the mere agent or trustee of both parties. In the case of *Lawrence vs. Farmers' Trust and Loan Company*, the instrument or trust deed was executed directly to the company, who were creditors of Champlin, as a security for the payment of his debt; and in case of default in its payment by him, they were authorized to sell the property, either at public auction, or private sale, and out of the proceeds to pay themselves, returning the surplus money to Champlin or his heirs. This instrument, though not in the usual form of a mortgage, nor intended by the parties as such, the court pronounced to be in law a mortgage, and held that a sale by the trustees, not in compliance with the provisions of their statute respecting foreclosures by advertisement, did not cut off the equity of redemption of Champlin and his heirs. The same is true of the cases of *Eaton vs. Whiting*, 3 Pick., 484; *Chowning vs. Fox*, 1 Rand., 306; *Palmer vs. Gurnsey*, 7 Wend., 248; *Ogden vs. Grant*, 6 Dana, 473; and *Cooper vs. Whiton*, 3 Hill, 95; upon the authority of which that case was decided.

In all these cases the power to sell was vested in the party for the payment of whose debt the sale was authorized. In *Chowning vs. Fox*, the reason for holding such a conveyance a mortgage instead of a deed, giving an absolute power of sale, is clearly stated. The court say that the question is whether a deed executed by a debtor, conveying land to his

creditor, and purporting to constitute him the trustee for selling the land, and applying the proceeds of the sale to the payment of the debt due to himself, can be regarded otherwise than as a mere mortgage, to which the right of redemption is incident; or, in other words, whether a creditor thus constituted as trustee can, by the mere authority derived from the deed, and without resort to a court of equity, sell the lands so as to bar the rights of the debtor, and those claiming under him; and they held, that in Virginia he could not. The reason given was, that such a power could only be vested in a third person, disinterested and indifferent between the parties; that the principles frequently declared in relation to the powers and duties of trustees in general, were utterly incompatible with the due exercise of those powers and duties by the creditors.

In *Lawrence vs. Trust & Loan Comp.*, the court held that such powers could be given to and exercised by the creditor, and that the whole matter was governed by the statute. The same is true with us. The instrument before us, so far as it was given to secure the payment of a debt, and conditioned for a reconveyance, in case of payment, and for a return to Sanborn of the overplus in case of a sale after failure to pay partakes of the nature of a mortgage. The test by which it is to be determined whether such an instrument is a mortgage or a trust seems to be, whether it be executed to a creditor or a third person. If to the former, it is a mortgage; but if to the latter, a trust.

In *McLanahan vs. McLanahan*, 6 Hump., 99, where real estate was conveyed to a creditor, with the understanding, and upon the trust that the creditor should satisfy his debts, indemnify himself against liabilities, pay the other debts of the vendor, and hand over the balance to his wife and children, it was holden that it was a mortgage as to the debt of the vendee, and a trust as to the balance.

In *Cooper vs. Whitney*, Judge Bronson said of a similar conveyance, that he was strongly inclined to the opinion that it should be regarded as a trust rather than a mortgage.

In *State vs. Lawson*, 1 English, 269, it was decided that an instrument like that under consideration partook so far of the nature of a mortgage that the vendor or *cestui que trust* had an equity of redemption which was liable to seizure and sale upon execution. The court, although they held it a trust, said it was not strictly a trust deed; that a conveyance, unconditional and without a reservation to the vendor, of any right of redemption upon payment of the money would have been. In *Humphrey vs. Snyder*, 1 Morris, 263, it was holden that the trustee named in a similar conveyance could not forclose in equity.

Mr. Burrill in his work on assignments, page 33, says that in most of the southern states "assignments in trust are frequently employed for a double purpose, ultimately as modes of provision for the *payment* of debts, but immediately as instruments of *security* against default of payment by the debtor. Hence, they are in many cases drawn with a condition that if the grantor pay the debt provided for, within a specified time, the trustee shall reconvey to him the property; or that the deed shall thereupon be void; or *e converso*, that if the debtor do not pay the debt by a day named, called the 'law day,' the trustee shall sell the property and apply the proceeds in payment. And special deeds of trust, with such conditions, are frequently made directly and exclusively to particular creditors, which gives them still more the character of mortgages. They are in fact mortgages, with the qualities of an assignment in trust superadded; or assignments to take effect at a future day." No case will be found, we think, which goes the length of holding them mortgages. See *Hewitt vs. Haling*, 11 Pa. St., 27.

It being determined that it was a trust and not a mortgage,

it remains to be inquired whether it was authorized by sec. 11, of chap. 57, of the statutes of 1849, above referred to.' We are of opinion that it was not. By the first section uses and trusts, except as authorized and modified, by that chapter were abolished. By section 11 express trusts might be created for any or either of five purposes therein specified. The only purpose material to be considered here is the first, viz: "To sell lands for the benefit of creditors." These words seem to point plainly to those absolute transfers made by debtors in embarrassed or insolvent circumstances of their estates to trustees for the benefit of their creditors, for the purpose of being turned into money and applied by the trustee to the payment of the debts due and owing by the assignors. The statute does not have regard to a conditional conveyance, by which the property may be reconveyed or revested in the debtor, but to an absolute assignment to sell and pay at all events. This construction seems plain and obvious. See *Ridgway vs. Stewart*, 4 Watts and Serg., 383; and *Manufac. & Mech. Bank vs. Bank Penn.*, 7 id., 335.

The instrument being neither a mortgage nor such a trust as by our statute the parties were authorized to create, it follows as a matter of course that none of the defendants acquired such a title to the property under it as would enable them on that ground alone successfully to defeat the action of the plaintiff. The intention of Sanborn no doubt was to secure a *bona fide* debt, which he owed to Clark, and there can be little question that under the circumstances a court of equity upon a proper application would have given effect to that intention as an equitable mortgage, notwithstanding the irregularity of the instrument, and would have made it available as a security at least as against the maker. There is as little doubt also that it could not have been foreclosed by advertisement under the statute. These are questions however not strictly pertinent to inquiries before us.

There is however a matter which we think decisive of the present controversy, and for which the judgment of the circuit court must be reversed.   We have decided in the case of *Nash vs. Church,* at this term, *supra,* 303, that a judgment in partition, where the proceedings were regularly had against unknown owners, was conclusive as to title of the partitioned premises, as against all the world.   *A fortiori,* it must be held conclusive as against all persons who were made parties and brought in by name.   Marvin was party defendant to the suit in partition in which judgment was rendered August 15, 1856, by the circuit court of Racine county.   He was regularly brought in by publication under the statute.   The objection to the order of publication is clearly untenable. Section 5, of chap. 131, of the statues of 1849, authorized county judges to exercise the power of a judge of the circuit court at chambers.   The same power of making the order was conferred upon him as upon the circuit judge.   That there was no proof of title, cannot be listened to.   The judgment recites that it appeared from the abstracts, exhibits and testimony adduced by the complainants, that they were entitled *in fee* to one equal undivided half of the premises. This is conclusive upon that question.   The provisions of section 26, of chap. 108, statutes 1849, must be regarded as directory to the commissioners; and when, as in that case, the allotments made are susceptible of an accurate description, by reference to known public boundaries or government surveys, they must be regarded as sufficient, without a designation of boundaries by posts, stones, or other permanent monuments.   These directions can only be held applicable to those cases where such monuments become necessary to an accurate and clear description of the several parts or portions allotted.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this opinion.