JOHN YOUST *et al.* v. WILLIS AND BRADFORD.

APPEALS FROM JUSTICE AND PROBATE COURTS—*Undertakings in—Procedure Upon.* The act of the legislature, approved February 26, 1895, to regulate the appeals from the justice of the peace and probate courts, and providing that when final judgment shall be rendered against the appellant in the district court, that on motion of the appellee, or any other person having an interest in such judgment, and after ten days' notice of such motion to be served upon the appellant, the court may enter up judgment against the surety or sureties on the appeal bond, for the amount of such judgment, rendered against the appellant, is not invalid, because retrospective, when applied in cases where the appeal bond was executed before the act took effect. The legislature may provide for changes in the procedure of courts, which affect only the remedy, and do not affect the obligation of any contract or the substantial rights of the parties.

*Error from the District Court of Payne County.*

*Neill & Clark* and *George P. Uhl,* for plaintiffs in error.

*King & Hutto,* for defendants in error.

The opinion of the court was delivered by

TARSNEY, J.:   On January 14, 1895, defendants in error, Willis and Bradford, obtained a judgment against the plaintiff in error, John Youst, in the probate court of Payne county, for the sum of $160 and costs of suit, taxed at $100.   From this judgment Youst appealed to the district court of said county, and for the purpose and in the perfection of said appeal, said Youst, on January 28, 1895, made and entered into an undertaking or bond for an appeal, as required by law, and containing the conditions, stipulations and undertakings provided by the statute therefor, and F. M. Stallard and George Stees, plaintiffs in error herein, signed and executed said undertaking, or appeal bond, as sureties thereon.   On May 24, 1895, said cause being heard in the district court, judgment was rendered therein, against the said Youst, for the sum of $221.27 and costs, amounting in the aggregate to $390.   Execution was issued on said judgment, and said execution was returned *nulle bona.* Thereafter, on the fourth day of February, 1896, defendants in error gave notice to said Youst, Stallard and Stees, that they had filed in said district court a motion to take judgment against said Youst as principal and against said Stallard and Stees as sureties upon said appeal bond, and that said motion would be presented to said district court on the first day of the ensuing April term thereof, or as soon thereafter as the same could be heard.   This notice was served upon all the plaintiffs in error.   Said motion was filed in said district court, and

on April 21, 1896, said motion was considered by the court. Upon the hearing of said motion, said Youst appeared and requested the court to allow and set a time for pleading to and resisting the said motion, which request was denied by the court. Stallard and Stees did not appear to said motion. The court entered a default against said Stallard and Stees, and after hearing said motion, and the evidence offered in support thereof, and of the service of notice thereof, rendered judgment upon said appeal bond in favor of said Willis and Bradford and against said Youst, Stallard and Stees, for the sum of $235.40 and costs taxed at $169.10. Exceptions were properly saved and the cause duly brought to this court for review.

The only assignment of error, which it is necessary for us to consider, is as follows:

"That the entire proceedings of the court below, in this matter, were without any warrant or authority of law and without jurisdiction over Stallard and Stees, and therefore void."

The proposition contended for by plaintiff in error is, that the court below had no jurisdiction of the persons of the plaintiffs in error, which would warrant the rendition of the judgment.

It is an ancient principle, embodied in all our constitutions, that no person can be deprived of life, liberty or property except by due process of law, and "due process of law" means, in the due course of legal proceedings according to those general rules and forms which have been established for the protection of private rights. (*Pennoyer v. Neff*, 95 U. S. 714; *Pierson v. Udall*, 95 U. S. 294; *McMillan v. Anderson*, 95 U. S. 237; *Davidson v. New Orleans*, 96 U. S. 97). In order that a judgment may be valid as being according to the due

course of judicial proceedings and by due process of law, it is essential, where the judgment is a personal judgment, that the court should have had jurisdiction, both of the subject matter and of the parties to the cause; and only those persons are concluded by the adjudication who are served with process or who voluntarily appear. (*McVey v. United States*, 11 Wall. 259; *Jack v. Thompson*, 41 Miss. 49; *Littleton v. Richardson*, 34 N. H. 179; *Meade v. Larkin*, 66 Ala. 87; Cooley's Const. Lim. 496). Process or notice of some kind is the vital breath that animates judicial jurisdiction over the person. It is the primary element of the application of the judicial power; it is the essence of a cause; without it, there cannot be parties, and without parties, there may be the forms of a sentence, but no judgment obligating the person. (Cases cited, *supra*).

Mr. Freeman, in his work on judgments, § 118, says:

"The power to hear and determine a cause is jurisdiction. * * Before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has been preferred and that such person or thing has been properly brought before the tribunal to answer the charge therein contained."

And in § 130 of said work, the author further adds:

"The defendant may also give the court jurisdiction by his voluntary action, as where he appears by his answer or in some other mode recognized by law. If he does not do so voluntarily, before the court can rightfully exercise jurisdiction over him, it must be authorized to require him to appear before it and submit to its judgment in the action or proceeding, and its process requiring such appearance, must be issued and served upon him in substantial compliance with the law."

We have, then, to inquire, does the record in this cause bring the proceedings therein within the rules and principles above stated, so as to show a want of jurisdiction in the court below to render the judgment complained of. Ordinarily, the proceedings to recover upon a cause of action, like the one at bar, would require that the defendants in error should have filed their petition in a court of competent jurisdiction, and have caused the process of the court, (the summons), to have issued and been served upon the plaintiffs in error, notifying them of the commencement of an action upon their obligation, and requiring them to answer thereto. That such was the state of the law in this territory, at the time said appeal bond was executed, there is no question. But it is contended, by defendants in error, that the proceeding in the district court was valid, because predicated upon and in conformity with the statute in force at the time such proceedings were had. By an act approved February 26, 1895, it was provided:

"SECTION 1. That when final judgment shall be rendered against the appellant, in the district court, in any action appealed from the probate courts or justice's courts, under the provisions for appeals from said courts, the court, on motion of appellee, or any other person having an interest in such judgment, or a right to any part of the costs in such actions, after ten days notice of such motion, to be served upon *appellant by copy delivered to him*, may enter up judgment in the name of the appellee or his legal representatives, against the surety or sureties on the appeal bond of the appellant for the amount of such judgment and the costs, which, by the terms thereof, the appellant may be required to pay. Execution may issue on such judgment, as in other cases, for the use and benefit of the successful party or any person interested in such judgment or in the cost of such

27—V.

actions. In case the bondsmen appeal from the judgment entered upon such motion, execution therein shall be stayed sixty day.

"SEC. 2. This act shall be in force and effect from and after its.passage and approval."

Was this act authorized under the constitutional principles we have stated; and was it valid to confer jurisdiction upon the district court over the persons of the sureties on said appeal bond?

Mr. Cooley says:

"The principles, then, upon which the process is based, are to determine whether it is 'due process' or not, and not any considerations of mere form. Administrative and remedial process may be changed, from time to time, but only with due regard to the landmarks established for the protection of the citizen. When the government, through its established agencies, interferes in the title to one's property, or with his independent enjoyment of it, and its action is çalled in question as not in accordance with the law of the land, we are to test its validity by those principles of civil liberty and constitutional protection which have become established in our system of laws, and not generally by rules that pertain to forms of procedure merely. Due process of law, in each particular case, means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the end in question belongs." (Cooley's Const. Lim. 434).

While, as we have said, no person can be deprived of liberty or property except by "due processs of law," which means by due course of legal proceedings, in accordance with established principles, and settled maxims, yet what constitutes due process of law, may differ with different classes of cases. While every man

has a right to require that his own controversies shall be judged by the same rules which are applied in the controversies of his neighbors, the necessity for general rules is not such as to preclude the legislature from establishing special rules for particular classes of cases; provided, the particular cases range themselves under some general rule of legislative power; and hence, there are a number of classes of cases where the property of the citizen may be taken without the actual service of ordinary process upon him, or without his ever actually having his day in court; and legislative enactments providing for such procedure have been sustained as not in violation of any constitutional right or inhibition. Proceedings in admirality, and in attachments against the property of non-resident debtors, are illustrations.

The right of the legislature to provide a substitute service for that of ordinary process—as a notice—by one party in a controversy to another in certain classes of cases, has been upheld, and the jurisdiction founded thereon, maintained.

*In the Matter of the Empire City Bank*, 18 N. Y. 199, it was said:

"It may be admitted that a statute which could authorize any debt or damages to be adjudged against a person upon purely *ex parte* proceedings without a pretense of notice, or any provision for defending, would be a violation of the constitution and be void; but where the legislature has presented a kind of notice, by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, I am of opinion that the court has not the power to pronounce the proceedings illegal." (*Jones v. Driscoll*, 94 Mo. 190; *Campbell v. Edmonds*, 45 N. Y. 356).

Where the statute provides for the taking of certain

security and authorizes a judgment to be rendered upon it, on motion, without process, the party entering into the security must be understood to assent to the conditions and to waive process and consent to judgment. (*Chappee v. Thomas,* 5 Mich. 53; *Pratt v. Donivan,* 10 Wis. 378; *Whitehurst v. Coleen,* 53 Ill. 247). On the principle of these cases, many statutes which provide for summary proceedings by motion, and with and without notice, for judgment upon appeal bonds and sureties, have been held valid, and we have no doubt of the constitutionality of the act of the legislature of this territory, above quoted, as to appeal bonds entered into and executed since the enactment of the law. But is it valid to sustain a judgment upon such bond, executed before it went into effect?

As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. The right to a particular remedy is not a vested right. The exceptions to this rule are those peculiar cases in which the remedy is a part of the right itself. The state may change or abolish old remedies and substitute new; or even without substituting any, if a reasonable remedy still remains.

Nor has a party a vested right in the procedure for his defense which will prevent changes in such procedure, which do not affect his substantial rights. There is no doubt of the right of the legislature to pass statutes which may reach back to and affect prior transactions, provided that no other objection exists to them than their retrospective character. There are numerous cases which hold that retrospective laws are not obnoxious to constitutional objection; while in others they have been held to be void. The distinction in the several cases

being based upon the question whether they did or did not impair the obligations of the contracts of the parties or change their substantial rights; and the rule is well established in relation to changes of judicial remedies and procedures, that whatever the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent statute; and if the change consists in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law. It follows that if the legislature might, by a prior law, have provided for dispensing with the ordinary process of the court, in order to give jurisdiction to the court over the persons of sureties upon appeal bonds, and substituted therefor such notice as is provided in the act of 1895, or to dispense with such process and notice and make the execution of the bond to give jurisdiction to the court, over their persons in the cause wherein it was made, then, we cannot see why it was not competent for the legislature to provide the procedure which they have provided, and why it is not operative and valid to authorize the proceedings had in this case. Individuals entering into contracts cannot bind the hands of the state as to the organization of its courts or their procedure, so long as such organization or procedure does not interfere with their contractual obligations or deprive them of an effectual remedy thereon. It is true that this statute does not provide for giving any notice to the sureties on such bonds, but only provides for a notification to the appellant that a judgment on the bond will be moved for; but the legislature might have provided for dispensing with notice to any or all the parties to the bond and have provided that the making and filing of the bond in the cause

would be sufficient to give jurisdiction to the court; and as to the sureties, that is, in effect, what this statute does.    The statute had been in force for months after they gave, their bond and before judgment was taken thereon.    They had been actually notified of the pendancy of the motion and as to the time when it would be considered.    By making the bond, and by operation of this law, they were in court, and the court might, lawfully, render judgment against them.

This being our conclusion, and there being no other error assigned, it follows that the judgment of the court below must be affirmed.    It is so ordered.

Dale, C. J., having presided in the court below, not sitting; Bierer, J., and McAtee, J., concurring; Keaton, J., dissenting.

Dissenting opinion by

KEATON, J.:    As I do not agree with my associates in the conclusions reached upon the questions decided in this case, and as they are of more than ordinary importance, I feel it my duty to state the reasons for my non-concurrence, although limit of time requires that I do so very briefly.

The principles enunciated by the supreme court of the United States, Freeman on Judgments, and Judge Cooley, in his incomparable work on constitutional limitations, contained in the first part of the foregoing opinion, meet with my unqualified approval, but I believe them utterly repugnant to the holding that ch. 31, Oklahoma Session Laws, 1895, is constitutional and valid. It will be observed that no notice whatever, upon the sureties who are to be bound by the judgment entered, is provided for in said chapter.    The provision that

notice shall be served upon the appellant is ridiculous as he is already bound by the original judgment. To uphold this law will be to encourage other legislation of this character, and it will require but one step further by the legislature in this direction to enact that the supreme court of this territory, upon affirming a judgment against an appellant or plaintiff in error, shall also enter up judgment against his bondsmen, and that the probate courts shall, upon the breach of their duties, enter up judgment against the bondsmen of executors and administrators, as the sureties on both these classes of bonds bind themselves that their principal will perform the orders and judgments of the respective courts. I think such legislation fundamentally wrong and in violation of our constitutional provision guaranteeing that the property of no individual shall be taken without due process of law. Suppose, for instance, that the alleged surety on the bond in an appeal from a justice to the district court never, in fact, executed said bond. Is it due process of law to enter judgment against him and issue an execution thereon and require him to resort to the extraordinary remedy of injunction and assume the burdens of advancing costs and giving indemnifying bonds in order to protect his property from sale under said execution? Suppose, again, that such an alleged surety should, by accident or otherwise, learn of the intended proceeding upon the motion of the appellee to enter judgment against him, and should appear in the court and set up the fact that he never executed the bond, or that same was executed by fraud or mistake, or allege any other competent defense to such proceeding, and demand a trial by jury, could the court grant same on the summary proceeding provided for in said chapter? If not, then how can the provisions thereof be declared valid

under said constitutional guarantee? The same difficulties will arise where the conditions of said bonds are illegal, or for any other cause not binding upon those who execute them as sureties. Suppose, further, that a surety upon such bond should die after the execution thereof and before the date of final judgment in the district court against the appellant, would it be due process of law for the district court to proceed to enter up judgment against the deceased? Under the provisions of said chapter there is no possible way for the court to know whether the surety is living or dead, as no notice of any kind is required to be served upon such surety to bring him into court; but, suppose the court should, in some way, ascertain the fact of the surety's death, would it be the court's duty, under said chapter, to enter up judgment against the heirs of the deceased, or administrator or executor? I think the provisions of this chapter wholly repugnant to reason and common sense, as well as violative of our Organic Law and can, therefore, never give my assent to upholding same.

It is clear to my mind that a surety upon an appeal bond is as much entitled to have his day in court as a surety on any other class of legal obligations; in fact, some of the most important litigation of the day grows out of the interpretation to be given to just such bonds and the question of the liability of the sureties thereon.

In entering my dissent in this case, I freely admit that there is considerable respectable authority, (perhaps the majority of the decided cases), sustaining the position taken by the majority of this court, but I cannot give my assent to the reasons given or the conclusions reached therein.

In *Chappee v. Thomas*, 5 Mich. 53, cited in the opinion

ion of the majority of this court, the reasoning upon which a similar statute was sustained is as follows:

"The bond is, we think, to be read in all respects as if the whole of the statute in reference to the appeal, the bond, and mode of entering up judgment upon it, were recited at large in the bond. And, in this view, it becomes a direct and binding assent to, and authority for, the entry of the judgment in this manner, and stands upon a principle analogous to that of a warrant of attorney. It is true the authority is here given to the court, instead of one of its officers, as the attorney of the party, but this is a difference of form rather than of substance."

It may be said in this connection, however, that Chief Justice Martin took no part in said decision.

From an examination of the opinion in *Chappee v. Thomas*, *supra*, it will be readily observed that the reasoning therein does not answer any of the objections above suggested to such a law as the one sustained by that, and a majority of this, court.

In the case of *Pratt v. Donovan*, 10 Wis. 320, the supreme court of that state, after assigning practically the same reasons for sustaining a similar law as those assigned in the opinion of the supreme court of Michigan in *Chappee v. Thomas*, *supra*, attempts to answer some of the writer's objections thereto, in the following language:

"And I think it is no objection to this view to say that the undertaking might be forged. The decision is placed upon the fact that the undertaking, assuming it genuine, fairly amounts to a consent to the entry of judgment. And we think the validity of the law is to be tested on this assumption. And if correct in the position that the undertaking is a consent, the fact that it might be forged does not invalidate the law. A *cognovit* might be forged; an attorney might, without authority,

consent to a judgment, or one person might, by collusion, be sued for another and consent to judgment; in all such cases the party wronged would undoubtedly be entitled to his remedy on a proper application to the court. But we think the possibility of such a forgery, or false personation, does not invalidate the law authorizing judgments by consent. The law proceeds on the assumption that the consent is genuine, and on that assumption its validity is to be determined."

The above is not a satisfactory answer to said· objections. If courts could assume all written instruments to be genuine and subsisting, then they could uphold a law providing for the entry of judgment against parties executing promissory notes, by simply bringing the notes into court and exhibiting them, without requiring any notice whatever to be served upon the parties proceeded against. It is true that the signatures to the note may be forged, or the note may have been paid, or the makers, or some of them, released, or some other valid defense to said note may exist, but the same may be true as to liability of sureties on an appeal bond. Such sureties may have paid the ·judgment against their principal. They may have been released by the appellee, or the conditions of the bond may be wholly insufficient to bind them, or their signatures thereto may have been forged, yet, judgment is to be entered against them upon the mere motion of the appellee and without any notice whatever to them.

The decision in *Pratt v. Donovan* was by a divided court, Paine, J., writing the opinion, which was concurred in by Dixon, C. J., with Cole, J., dissenting.

I think the doctrine announced and adhered to by the supreme court of Kentucky, which is practically opposite to that contained in the majority opinion herein, the correct one. (See *Hughes v. Hughes*, 4 B. Mon. 43). And

*Smith v. Smith,* [Miss.], 1 Howard, 102, is also directly in point as supporting the same doctrine.

In all of the cases cited in the opinion concurred in by the majority of the court the liability of the sureties is based upon the proposition that such sureties must have known the law when they signed the obligation and that the law therefore became as much a part of the obligation as if written into the bond; in fact this is the only theory upon which such a statute can possibly be upheld, and, in the case at bar, no such law existed when the sureties incurred the liability on the bond. It cannot then be said that at the time of the execution of the undertaking such law became a part thereof, but the majority of the court hold that whatever the legislature could have legally enacted prior to the execution of the bond as to the procedure which should be employed in procuring judgment against the sureties thereon, could be enacted subsequently thereto and made binding upon such sureties. This, in my opinion, cannot be sustained in reason or authority, even if it should be conceded that the act in question is valid as to bonds executed subsequent to its enactment. I agree that the procedure as to the manner of bringing said sureties into court could be changed by the legislature subsequently to the inception of their liability on said undertaking, provided the mode of procedure subsequently enacted required that they be given actual notice of the proceedings against them by which the judgment against the principal in the undertaking should also become a judgment against them, but I can go no farther and feel that I am supported by sound principles of law.

Entertaining these views, I hold that the statute in question should be declared unconstitutional and void

and especially so regarding the liability of the sureties on the appeal bond in question.