GEORGE A. MARSH, Impl'd, etc.

v.

THE THOMPSON NATIONAL BANK.

1. GUARANTY OF NOTE—AUTHORITY OF PARTNER TO GUARANTEE IN FIRM NAME.—A partner has no authority by virtue of the partnership relations to sign the firm name for any purpose not connected with the partnership business, and he cannot, without express authority from his partners, bind the firm as guarantors of commercial paper not given in the course of the partnership dealings.

2. RIGHTS OF BONA FIDE HOLDERS—PRESUMPTION.—Third persons becoming holders in good faith of negotiable paper executed by a firm, are entitled to the presumption that such paper was executed in the course of the partnership business, and upon competent authority, unless notified to the contrary, or put upon inquiry as to the want of power in the partner to bind his firm.

3. NOTICE OF WANT OF POWER.—If on the face of the paper it appears that the firm purports to execute it not as a principal, but as a mere surety or guarantor for some other person, the party taking the paper has actual notice of the fact that it is not signed in the ordinary course of the partnership business, and he must at his peril ascertain that there was a special authority given the partner to use the firm name, as such guarantor, or that the paper was in fact given in the course of the partnership business.

4. INDIVIDUAL NOTE OF PARTNER.—So, where a note was signed by one partner in his individual name, and by him guaranteed in the firm name, the character in which he undertook to bind his firm appeared on the face of the paper itself, and a subsequent holder of such note takes it with notice that he was seeking to bind his firm as guarantors, and that such undertaking was not in the course of the partnership business.

5. RATIFICATION BY FIRM—WAIVER OF PROTEST IS NOT.—The fact that the other member of the firm, when the note was presented for payment, endorsed thereon a waiver of notice, protest, etc., for the purpose of saving

expense, cannot be considered as a ratification or adoption by the firm of the unauthorized act of the partner in making such guaranty; nor is the failure to make prompt denial of firm liability, on such note being presented for payment, sufficient to establish a ratification, or an admission of liability.

APPEAL from the Superior Court of Cook county; the Hon., JOSEPH E. GARY, Judge, presiding.

Mr. WIRT DEXTER and Mr. JOHN J. HERRICK, for appellants; that a partner has no authority to bind the firm as guarantors or sureties on commercial paper, cited Parsons on Partnership, 237; 1 Parsons on Notes and Bills, 140; Stall v. Catskill Bank, 18 Wend. 477; N. Y. F. Ins. Co. v. Bennett, 5 Conn. 574; Mauldin v. Branch Bank, 2 Ala. 502; Sweetser v. French, 2 Cush. 314; Sutton v. Irwin, 12 S. & R. 13; Tompkins v. Woodyard, 5 W. Va. 216.

If it appears upon the face of the note that it was signed by a firm as guarantors merely, this is notice to any who may take it that it was given out of the course of the partnership business, and no recovery can be had thereon without proving the assent of the firm thereto: 1 Parsons on Notes and Bills, 140; Sweetser v. French, 2 Cush. 314; Hamill v. Perris, 2 Penn. 177; Duncan v. Lowndes, 3 Camp. 478; Tompkins v. Woodyard, 5 W. Va. 216.

Mere failure to deny liability is not a ratification: Eliott v. Dudley, 19 Barb. 326; Mareen v. Mack, 10 Wend. 463; Reuben v. Cohen, 48 Cal. 545; McKinny v. Brights, 16 Pa. St. 404; Hortons v. Lewis, 6 Leigh, 60; 1 Am. Leading Cas. 719.

Mr. FREDERIC ULLMANN, for appellees; as to ratification by appellant, contended that where an agent exceeds his authority, the principal, on information, should repudiate the action or he will be considered as having ratified it, and cited Ward v. Williams, 26 Ill. 447; Searing v. Butler, 69 Ill. 275; Cairns v. Bleeker, 12 Johns. 300; Foster v. Rockwell, 104 Mass. 167; Commercial Bank v. Warren, 15 N. Y. 577.

BAILEY, J. This was a suit in assumpsit brought by appellee against appellant, Moses H. Goodrich and John W.

Clampitt, on a guaranty of a promissory note. Summons was served on appellant and Goodridge, and returned " not found " as to Clampitt. Goodridge failing to appear was defaulted. Appellant plead the general issue verified by his affidavit, and on trial before the court, without a jury, the issue was found for appellee, and judgment rendered in its favor against appellant and Goodridge for $366.40 and costs. The only question presented by the record, is whether appellant is liable on said guaranty.

The evidence shows that at the time of the transaction in question, appellant and Goodridge were partners, trading and doing business under the firm name of Marsh & Goodridge. On the 9th day of October, 1875, Goodridge executed to Clampitt, who was his brother-in-law, for a consideration having no relation to the partnership business, his individual promissory note for $320, payable to the order of said Clampitt ninety days after date. This note was endorsed in blank by Clampitt, and on the back of it was placed a guaranty of prompt payment at maturity, in the handwriting of Goodridge, and signed by him with the firm name of Marsh & Goodridge, and also by Clampitt. The note thus endorsed and guaranteed was negotiated by Clampitt to appellee.

There seems to have been an express agreement between appellee and Goodridge, against the use of the firm name as security for any person outside of the firm, and there is no evidence of any express authority from appellant to his co-partner, to use the firm name for the purpose of guaranteeing the paper in question.

The law is well settled that a partner has no authority by virtue of the partnership relation, to sign the firm name for any purpose not embraced in the partnership business, and as a consequence he cannot, without express authority from his firm, bind the firm as guarantors or sureties on commercial paper not given in the course of the partnership dealings. It is no part of the ordinary business of a mercantile firm to execute accommodation paper, or to become sureties or guarantors for third persons, or to pay the private debts of the individual partners, and, of course, there is no implied authority

for one member to guarantee, in the name of the firm, paper in which the partnership has no interest.

Unquestionably third persons becoming endorsees, in good faith, of negotiable paper executed by a firm are entitled to the presumption that such paper was executed in the course of the partnership business and upon competent authority, unless notified to the contrary, or put upon inquiry as to the want of power of the partner executing it, to bind his firm. If, however, it appears on the face of the paper that the firm purports to execute it, not as a principal, but as a mere surety or guarantor for some other person, the party taking the paper has actual notice of the fact that it is not signed in the ordinary course of the partnership business. He must, therefore, at his peril, make the necessary inquiries and ascertain that there was some special authority to the partner signing, to sign the partnership name as such sureties or guarantors, or that the paper was in fact given in the course of the partnership business.

In this case the character in which Goodridge undertook to bind his firm appeared on the face of the paper itself. Appellee, in taking it, had notice that he was seeking to bind his firm as guarantors, and that such undertaking was not in the course of their partnership business. An attempt, however, is made to establish a subsequent ratification by appellant. On the day of the maturity of the note, one Reed, the broker who negotiated it for Clampitt, and one Brewster, an agent of appellee, presented the note to appellant for payment. This seems to have been the first knowledge appellant had of its existence. At this interview, as related by appellant in his testimony, appellant told Reed and Brewster that he knew nothing at all about the existence of the note, and that it was a surprise to him; that while he did not deny Goodridge's signature of the firm name, the note had nothing to do with the firm, and was undoubtedly given by Goodridge for his brother-in-law; that Goodridge had gone away, and as appellee presumed, had forgotten the note; that he had no idea but that Goodridge would fix it up, and advised them to write to him about it; that there was no use of making costs of protest and that he would waive protest. Appellant thereupon indorsed on the note a

waiver of protest, and signed to such waiver the firm name. In answer to the question: "What did you say as to whether you were liable upon it?" he said: "I do not think I should have decided the question whether I was liable or not, because I do not think I knew whether I was liable or not."

Neither Reed nor Brewster is able to state even the substance of what was said at this interview, but say he did not deny his liability on the note, and that they came away with the impression that the note was all right. These witnesses, however, do not deny the substantial accuracy of the account of the interview given by appellant. They do not deny that appellant claimed to be ignorant of the note until it was shown to him by them, or that he told them that it was Goodridge's matter, and had nothing to do with the firm business.

We are unable to perceive how the facts here stated can be held to amount to a ratification or adoption by appellant of the unauthorized act of his co-partner. Such effect certainly cannot be given to the fact that appellant, for the purpose of saving expense, was willing to waive, and did waive on behalf of his firm, protest of the paper. Protest would have been simply evidence of presentment, demand and refusal of payment, and notice thereof to appellant's firm, and a waiver of protest was simply a stipulation that appellee might omit that formality, and still be in the same plight as though it had been observed. If any further effect is to be given to the stipulation, it should be held to be rather a denial than an admission of liability, for it gave appellee the benefit without formal proof, of a demand and a refusal by appellant to make payment. At any rate, we are unable to perceive that a waiver of protest is in any view inconsistent with a denial of liability.

Nor do we think the fact that appellant did not in terms deny his liability on the note, sufficient to establish a ratification. Mere silence would not have been a ratification. In Reubin v. Cohen, 48 Cal. 545, it was held that the mere fact that a partner, upon being informed that his co-partner had given a firm note for his individual debt, did not deny his liability thereon, did not *per se* amount in point of law to a ratification or adoption of the note, though it might be a circumstance

tending to show assent. In this case it is true, appellant, while he did not admit his liability, did not assert in terms his non-liability. He did, however, assert the facts which went to establish his exemption from liability. He asserted, in substance, that the guaranty was an unauthorized use of the firm name by his co-partner, in a matter outside the firm business. This was tantamount to saying that the guaranty was not binding on the firm. Appellant admits that he did not decide the question of his liability, because he did not know whether he was liable or not. This may well have been. His liability depended upon questions of law as well as of fact, and he may well have felt disqualified to decide the legal propositions involved. All he could do, and all he was called upon to do, was to assert the facts bearing upon the question of his exemption from liability, and his doing so was a sufficient denial of liability.

Some evidence was introduced with a view of attempting to charge appellant with knowledge of the use being made by Goodridge of the firm name at the time of the execution of the guaranty in question. It is shown that Goodridge, on two or three prior occasions, had given similar notes, and had given firm checks in payment of the same, and that a memorandum of such checks was written on the stub of the firm check-book. It appears, however, that each partner had the right to draw checks on the firm account as he might need money for his private purposes; and we fail to find anything in these memoranda on the stubs in the check-book giving any indication of the purposes to which Goodridge applied the money thus drawn. Witness Reed testifies to having gone several times to the place of business of Marsh & Goodridge, to see them in relation to such previous notes given by Goodridge, and while he swears that he thinks appellant must have known of the existence of said series of notes, he entirely fails to recollect any occasion on which any of said notes were shown by him to appellant, or when anything was said by him to appellant in relation thereto, and is unable to state any fact upon which such opinion is based.

After carefully considering all the evidence in the case, we fail to find any warrant for the judgment of the court below.

It was against the evidence, and accordingly the judgment must be reversed and the cause remanded for another trial.

Judgment reversed.