(Opinion published 52 N. W. Rep. 214.)

WILSON J. VAN DYKE *vs.* M. A. SEELYE *et al.*

Argued April 29, 1892. Decided May 20, 1892.

**Partnership—Firm Name to Accommodation Notes.**—The mere partnership relation does not authorize a partner to execute bills or notes in the firm name for the accommodation of, or as surety for, a third person, nor will the mere fact that the partnership may obtain some indirect or incidental benefit from the transaction authorize him to do so.

**Note Presumed Given for Firm Debts.**—Where a note has been executed by a member of a firm, the presumption is (nothing to the contrary appearing on the face of the paper) that it was given for a partnership purpose.

**Evidence of Authority to so Use Firm Name — Burden of Proof.** — But where it is made to appear that it was given for a purpose outside of the scope of the partnership business, (as, for example. for the accommodation of a third person,) and that the plaintiff took it with notice of

that fact, the burden is on him to prove affirmatively the precedent authority or subsequent ratification of the other partners.

**Ratification—Silence is not.**—Mere silence or omission to repudiate the unauthorized act of the partner, upon knowledge of the facts, will not *per se* amount to ratification; the other partners are not bound, as a matter of law, to deny their liability until it is sought to be enforced.

Appeal by defendant William H. Eustis from an order of the District Court of Hennepin county, *Canty,* J., made August 29, 1891, refusing his motion for a new trial.

Wilson J. Van Dyke brought this action to recover the contents of a promissory note for $3,800, and interest, dated October 4, 1886, payable to his order seven months thereafter, made by Seelye & Harris, and indorsed by W. E. Neal & Co., of which last-named firm Eustis was a member. All the members of both firms were made defendants. On the trial a verdict was rendered against all for $1,-555.51, balance due. Eustis claimed that his partner, Neal, indorsed the note with their firm name for the accommodation of Seelye & Harris, without his consent. Plaintiff claimed that Eustis ratified his partner's act by waiving protest and notice when the note fell due. He alone moved for a new trial, and, being denied, appealed to this court.

*D. F. Morgan,* for appellant.

Eustis is not liable, although the name of W. E. Neal & Co. is on the note, unless it be shown that he authorized his copartner to sign it, and bind him in the transaction. Such nonliability results from the rule that it is no part of the business of a partnership, or the agency of a partner, to guaranty the debts of others, or to lend their credit by giving accommodation paper. *Selden* v. *Bank of Commerce,* 3 Minn. 166, (Gil. 108;) *D. M. Osborne & Co.* v. *Stone,* 30 Minn. 25; *D. M. Osborne & Co.* v. *Thompson,* 35 Minn. 229; *Brettel* v. *Williams,* 4 Exch. 623; *Charman* v. *McLane,* 1 Or. 339; *Dow* v. *Smith,* 8 Ga. 551; *Durant* v. *Rogers,* 87 Ill. 508; *Marsh* v. *Gold,* 2 Pick. 285.

The assent of the partners to the use of the partnership name on accommodation paper by their copartner must be proved by positive evidence. It will not be inferred from the mere fact that they ob-

tain knowledge of the transaction after it has taken place. They are not bound to deny their liability until they are prosecuted as indorsers. See this matter discussed and the cases considered in 15 Cent. Law J. 222–224; *Elliott* v. *Dudley,* 19 Barb. 326; *Reubin* v. *Cohen,* 48 Cal. 545.

*Little & Nunn,* for respondent.

The firm name upon a bill or note is presumed to constitute a firm obligation, and to bind the firm, and all its members. 1878 G. S. ch. 73, § 89; *Carrier* v. *Cameron,* 31 Mich. 373; *First Nat. Bank of Chittenango* v. *Morgan,* 73 N. Y. 593; *Lindh* v. *Crowley,* 29 Kan. 756; *Manufacturers' & Mechanics' Bank* v. *Winship,* 5 Pick. 11.

On the day of the maturity of the note, W. H. Eustis, at the request of Van Dyke, wrote on the note, over his firm's indorsement, the words "Demand, notice, and protest waived," thereby ratifying the signature made by his copartner for the firm.

If the defendant Eustis did not, within a reasonable time after he was possessed of full knowledge of the facts, repudiate his presumptive liability, the fact would be evidence that the jury might consider on the question whether Eustis acquiesced in and ratified the acts of Neal, in indorsing the note with the firm name. *Stearns* v. *Johnson,* 19 Minn. 540, (Gil. 470;) *Reubin* v. *Cohen,* 48 Cal. 545; *Good* v. *Martin,* 95 U. S. 90.

MITCHELL, J. The evidence in this case proved, or at least tended to prove, the following facts:

The firm of W. E. Neal & Co., composed of one Neal and the appellant, Eustis, were the agents of plaintiff for the purpose of looking after his pine lands, with authority to collect stumpage for timber cut by trespassers, also to make contracts (subject to plaintiff's approval) for the sale of stumpage, and for cutting and driving logs, for which services they were to receive from plaintiff five per cent. of the net proceeds of all such collections or sales. In pursuance of this agency, Neal made with the firm of Seelye & Harris a contract (subject to plaintiff's approval) by which the latter were to cut and bank the timber on a part of plaintiff's land, and for which they

were to receive from plaintiff a stipulated sum per thousand. Seelye & Harris and Neal then went to plaintiff to have the proposed contract formally executed, and thereupon plaintiff and Seelye & Harris executed a written contract according to the terms already agreed on with Neal. Seelye & Harris requested of plaintiff an advance or loan of some money with which to buy stock and supplies for the contemplated logging operations. Thereupon plaintiff advanced them the desired amount, for which they executed to him their promissory note, which Neal, for their accommodation and as surety for them, indorsed in the name of his firm. Suit having been brought on this note against both firms, (Seelye & Harris and W. E. Neal & Co.,) Eustis denied his liabilities on the ground that Neal had no authority to bind the firm.

Evidence was introduced on the trial tending to show that subsequently, when Eustis was informed of Neal's act, he did not repudiate it or deny his liability, but, on the contrary, waived protest of the note, but the evidence as to the circumstances under which he did this was very conflicting. Upon the trial the plaintiff seems to have claimed the liability of Eustis on two grounds: *First*, that although the money was to be used by Seelye & Harris in their logging operations, yet it was in fact advanced by W. E. Neal & Co., in accordance with the terms of the agency contract between that firm and himself, and hence that the execution of the note by Neal was within the scope of the partnership business; *second*, that even if Neal signed the firm name merely as surety for Seelye & Harris, Eustis had subsequently ratified the act. But although the two positions were entirely distinct and independent of each other, they seem to have been somewhat confounded and commingled on the trial.

The court charged the jury as follows: "If you find that the indorsement was made by Neal for the purpose of procuring some benefit to his firm, as, for instance, the benefit of the five per cent. commission to be realized by them out of the profits of the cutting, hauling, and sale of the logs; if the contract for the cutting and hauling would not, or he believed it would not, have been made without the additional security for it to be given to Van Dyke, by its being signed by W. E. Neal & Co., or, for instance, if the firm of W.

E. Neal & Co. were induced to sign it on account of the benefit of getting money for Seelye & Harris, and having it applied to the payment of some debt then owing from Seelye & Harris to W. E. Neal & Co.; or if," etc.,—"then you will find for the plaintiff." This was clearly wrong. It is elementary in the law of partnership that the mere partnership relation does not authorize a partner to use the partnership name for the accommodation of or as surety for another. This is entirely outside the scope of the partnership business, and not within the implied agency of a partner in behalf of the firm. The authority of the partner to execute bills and notes in the name of the firm, even where their business is one in which the issuance of such paper is necessary or usual, extends only to partnership transactions. The fact that the firm may obtain some indirect or incidental benefit from the transaction "will not suspend a restriction so essential." Bates, Partn. § 349; *D. M. Osborne & Co.* v. *Thompson*, 35 Minn. 229, (28 N. W. Rep. 260;) *Brettel* v. *Williams*, 4 Exch. 623.

The error in this charge was not cured by subsequently instructing the jury that "the transaction in which Neal & Co. was receiving the benefit must have been within the scope of the business of the firm,. and within the scope of the authority of Neal;" for the jury would, necessarily understand from what preceded that Neal would have authority to bind his firm as accommodation indorser or surety in order to secure the benefit of the commission on the sale of the logs, or if he believed that if Seelye & Harris secured the money from plaintiff they would use some of it in paying a debt to Neal & Co., or in buying supplies from them.

It is not necessary to consider whether there was any evidence that would have justified the jury in finding that plaintiff advanced the money to Neal & Co., or, if so, whether any such finding would have been within the issues tendered by the complaint, for there was at least ample evidence from which the jury might have found that the money was advanced to Seelye & Harris, and that Neal indorsed the note as surety for them; and the charge was evidently aimed at that assumed state of facts, and the jury must have so understood it. For this error, if no other, a new trial must be ordered.

v.49M.—36

2. The court also charged the jury that "this indorsement of the name of Neal & Co. having been written by a partner of the firm, it is presumed, until the contrary appears, that it was made by authority of all the members of the partnership."

From some things in the context, by way of explanation, it would seem that the learned judge perhaps did not mean precisely what this language would seem to imply, yet it was, if not positive error, at least very misleading, in view of the evidence.

It is unquestionably the law that, if a member of a firm gives a note in the firm name, the presumption is (at least, where there is nothing on the face of the paper to show the contrary, and when the business of the copartnership is one in which it is necessary or usual to issue bills or notes) that the note was given for a partnership purpose, and constitutes a valid demand against the firm. But it is equally well settled that when it is made to appear that it was not given for a partnership purpose, as, for example, in payment of the individual debt of the partner who executed it, or as surety for a third person, and was taken by the plaintiff with knowledge of that fact, then the burden is on the plaintiff to prove affirmatively the precedent authority or subsequent ratification of the other partners. This is the universal rule, at least in this country. *Bank of Commerce* v. *Selden*, 3 Minn. 155, (Gil. 99;) *Selden* v. *Bank of Commerce*, 3 Minn. 166, (Gil. 108;) *D. M. Osborne & Co.* v. *Stone*, 30 Minn. 25, (13 N. W. Rep. 922;) Bates, Partn. §§ 361, 362; Pars. Partn. 202. And, notwithstanding some former doubt on the subject, the doctrine of the English courts seems to be substantially the same. *Frankland* v. *McGusty*, 1 Knapp, 274. Upon the state of the evidence the jury might well have understood the instruction as meaning that, notwithstanding it appeared that Neal indorsed the firm name for the accommodation of Seelye & Harris, yet the presumption would be that it was done with the authority of Eustis. The presumption would be just the reverse.

3. On the subject of ratification, the court, at the request of the plaintiff, instructed the jury that "it was the duty of the defendant Eustis, when the same [the unauthorized act of Neal] came to his knowledge, to clearly and promptly repudiate the firm signature and

his liability; and, if he did not do so within a reasonable time after he was possessed of full knowledge of the facts and transaction and the signing of the note, then that failure to do so, within a reasonable time thereafter, will be evidence that he acquiesced therein, and ratified the signature and act of Neal in signing the firm name on the back of the note." This is not an accurate statement of the law. Of course, silence or a failure to repudiate, upon ascertaining the facts, would be evidence of assent, more or less strong, according to circumstances. But the mere fact that a partner, after knowledge that another partner has given a note in the name of the firm in a transaction outside the scope of the partnership business, keeps silence, and does not repudiate the act, does not *per se* amount in law to ratification or adoption. Ratification is in the nature of an affirmative act, which in such a case cannot be established by a mere omission to disavow. The partner is not bound, as a matter of law, to deny his liability until he is prosecuted. *Reubin* v. *Cohen*, 48 Cal. 545; *Elliott* v. *Dudley*, 19 Barb. 326; *Mercein* v. *Mack*, 10 Wend. 461; *Marsh* v. *Bank*, 2 Ill. App. 217.

Of course, we are not referring to cases where the doctrine of equitable estoppel might apply. Nothing appears to have occurred that entitled the plaintiff in the present case to invoke any such doctrine.

Reversed, and new trial ordered.

(Opinion published 52 N. W. Rep. 215.)