CASE 32—ORDINARY—MARCH 25, 1882.

# Berry v. Pusey.

APPEAL FROM MEADE CIRCUIT COURT.

1. A boy, by the negligence of some of the crew of a steamboat, has his leg broken. The captain takes him to the office of a physician, and requests that surgical attention be given him. It was given. He has his cause of action against the captain of the boat for the value of his services.

2. Only the controlling facts of a case may be properly presented to a jury in the form of special interrogatories.

3. The requirement of the Code, that the verdict of the jury shall be signed by the foreman, is directory.

4. The motion to set the verdict aside because it was not so signed came after the jury was discharged, and came too late.

LEWIS & FARLEIGH FOR APPELLANT.

1. The court should have sustained appellant's motion for a nonsuit.

2. The facts in no sense authorize a verdict against appellant. (Hauth v. Roberts, 3 J. J. Mar., 298; Parker v. Jenkins, 3 Bush, 587; McKibben v. Baker, 1 B. M., 122.)

3. The court erred in giving the instructions to the jury.

4. The verdict of the jury was not signed when delivered.

5. Material questions propounded by the court to the jury were not answered.

THOS. B. FARLEIGH AND BUTLER & BRASHEARS FOR APPELLEE.

1. The verdict of the jury is amply sustained by the proof.

2. Although the verdict was unsigned when first delivered, before the jury was discharged all informalities were cured, and this before any motion or objection was made by appellant.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

It is evident from the history of this case, as detailed by the witnesses, that the appellant, either for himself or those he was representing, undertook to have young Bayard taken care of and treated by medical skill on account of the injury he had received by reason of the accident occurring on the boat, of which the appellant was captain.

Berry v. Pusey.

This injury seems to have been the result of negligence on the part of the owners of the boat or its employés, and the claim of Bayard for damages afterwards compromised; but whether so or not, the young man was taken to Brandenburg at the instance of the appellant, and from what transpired at the time, both the young man and his parents had the right to believe that the appellant, either for himself or the company for which he was acting, was assuming the liabilities that must necessarily arise from the medical treatment of the injured boy.

He took him on his boat to Brandenburg, and had him carried to the office of Dr. Shenal, the physician of the young man's family, and the doctor being absent, he was carried by the appellant and others to the office of Dr. Pusey, the appellee. This surgeon being also absent, and the appellant being desirous of pursuing his journey with the boat, had the young man left at the office of the appellee, with *instructions to have every necessary attention given him, and have him ready to be sent home on the boat going down that night.* The appellant leaving for his boat, the appellee came to his office, and finding the young man there, carefully and skillfully dressed his mangled limb, and had him in such a condition as to enable him to go back to his home on the same evening, in accordance with appellant's request, on the return boat. This was the substance of the testimony introduced by the appellee, and the principal error complained of is the refusal of the court to instruct the jury to find for the defendant. We think that motion was properly overruled, as the facts of this case, although Pusey may never have seen or even known the appellant, authorized the verdict against him.

The appellant, it is true, testified, after this motion for a nonsuit was overruled, denying any employment of the appellee, or any authority given others to employ him; still the facts were all before the jury, and it is their province alone to pass upon such questions.  The institution of an action originally by the appellee against the Packet Company then pending, could not be pleaded in abatement to this action, as the parties were not the same, nor was it conclusive against the claims asserted against the appellant.  Pusey had the right to presume, that as the appellant was the captain of the boat, and as such the agent of the company in the transaction of its business, that the company would voluntarily assume the payment of the bill, and may have supposed that the company was legally responsible to him for the debt; but when it appeared that the appellant denied any authority to make the employment, and the suit against the company was virtually abandoned, the question arose as to who was liable under the facts of the case.  The young man occupied no such relation by blood or employment to the appellant as would create an implied promise to pay; but he did bring the young man to the office of the surgeon to have his wound examined and dressed by him that had originated, as was supposed at the time, from some negligence of those in charge of the boat.  Having carried the young man to the office of the surgeon, the appellant left instructions to have him attended to, so that he might return on the evening boat.  That was done, and the surgeon should be paid, and upon the facts of this case the jury had the right to say that the employment was made by the appellant.

Several special interrogatories were propounded by the appellee, or at his instance, to be answered by the jury, also others propounded by the appellant.

The third question propounded by the defendant, now appellant, was: Did the defendant Berry employ the plaintiff Pusey to perform the services charged? The court at the time told the jury that, before they could answer this question in the affirmative, they must believe that the services were rendered at the instance and request of the defendant, and that, to arrive at a conclusion, they should take into consideration all the facts and circumstances proven in the case. It is certain that the plaintiff had the right to ask for an instruction similar in effect bearing upon the general issue as made. This was, in fact, the issue without the aid of a special interrogatory, and we perceive, for this reason, no objection to the instruction. In fact, the special interrogatory needed some explanation by the court, as the jury might have inferred that the presence of the defendant at the time was necessary to the employment, or that a special authority in express words had been given to others to employ the appellee. Besides, the interrogatories propounded by the defendant not only embraced the controlling facts in the case, but the jury was required to answer questions that, if responded to the one way or the other, could not have affected the finding, but conduced to confound the jury in their effort to arrive at the truth. The special interrogatories authorized to be propounded, or such as the court is required to propound at the instance of either party, are such as will elicit a response to the existence or non-existence of certain alleged facts, the truth of which, if established, must control the verdict. In this case the jury, at the instance of the defendant, was required to answer whether or not the appellee knew the appellant, and whether the appellant knew the appellee. The response to the questions might have been either way

and still not inconsistent with a verdict either for the one party or the other. Did he employ the plaintiff, or authorize any one else to employ him, to attend to the injured man? Did he, when leaving, give instructions to those present to have the doctor administer to the patient? These questions, if answered in the negative, would be inconsistent with a verdict for the appellee, and if answered in the affirmative, either question would be consistent with a verdict for him. It is the controlling facts of a case that the jury may be called upon to establish or negative by their response to a special interrogatory; and not the mere evidence as to the existence or non-existence of those facts.

It is also urged as a ground for a reversal that neither the general or special verdict was signed by the foreman of the jury.

We think this provision of the Code is merely directory, particularly in civil cases, and certainly the objections come too late after the jury has been discharged. The jury, when the verdict in this case was returned into court, heard the special interrogatories read by the foreman, and the verdict was then handed to the clerk and again read by him, and the jury asked if it was their verdict, and an affirmative response was made. The verdict was then entered of record and made the judgment of the court, and is binding on the parties to it.

We perceive no error to the prejudice of the party complaining in this case.