THE STATE OF KANSAS v. PHILLIP MILLER.

No. 14,277.    (80 Pac. 51.)

SYLLABUS BY THE COURT.

1. RAPE—*Testimony of Prosecutrix.* In a prosecution for statutory rape, where the prosecutrix testified to intercourse with defendant, it was competent for her to testify that conception followed, that in due time a child was born, and that defendant was the father of the child.

2. PRACTICE, SUPREME COURT—*Abuse of Discretion.* How far leading questions are essential to the ends of justice must be left largely to the sound discretion of the trial court, and, unless there has been a clear abuse of such discretion, a reviewing court may not interfere. ·

The State v. Miller.

3. RAPE—*Proof of Age of Prosecutrix*. It was competent for the prosecuting witness to testify as to her age, although her parents were present and gave testimony with respect to that fact.

4. ———— *Entry in Family Record Improperly Admitted*. An entry in a family record of the age of a child, made by, or at the instance of, her father, is not admissible in evidence where he is alive and is a witness in the case.

Appeal from Barton district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed March 11, 1905. Reversed.

*C. C. Coleman*, attorney-general, *Jay F. Close*, assistant attorney-general, and *James W. Clark*, for The State; *Russell & Russell*, of counsel.

*Osmond & Cole*, and *D. A. Banta*, for appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: Phillip Miller was convicted of the offense of rape, committed upon Mollie Neidens, a girl under the age of eighteen years. In his appeal he complains that Mollie was permitted to testify as to the birth and parentage of the child, the fruit of the illicit relation. Having testified to the intercourse, it was competent for her to state that conception followed, and that the defendant was the father of the child so begotten. (*The State v. Walke*, 69 Kan. 183, 76 Pac. 408.)

There is complaint that leading questions were allowed in the examination of the prosecuting witness. This objection, if well-founded, is hardly available, as the defendant has not pointed out to us the objectionable questions. The youth of the prosecutrix, her reluctance to testify, as well as her unfamiliarity with the English language, warranted considerable latitude in the allowance of leading questions. How far leading questions are essential to the ends of justice must be left largely to the sound discretion of the trial

court, and unless there has been a clear abuse of discretion an appellate court may not interfere. In this instance we cannot say that there was an abuse of discretion.

Complaint is made that the prosecuting witness was permitted to testify as to her age, when her parents were both present in court and gave testimony with respect to that fact. Although the testimony of the father and mother with respect to the age of a person may be stronger, and entitled to greater weight, it is nevertheless well settled that one may testify as to his own age, and such force will be given to the testimony as the court or jury trying the case may think it is entitled to receive. (*The State v. McClain,* 49 Kan. 730, 31 Pac. 790; *Hill v. Eldridge,* 126 Mass. 234; *State v. Cain,* 9 W. Va. 559; *Morrell v. Morgan,* 65 Cal. 575, 4 Pac. 580; *Central Railroad v. Coggin,* 73 Ga. 689; *State v. Best,* 108 N. C. 747, 12 S. E. 907; 20 Cent. Dig. c. 1692.)

To show the age of the prosecutrix there was received in evidence a translation of a copy of a parish record in Russia. It purported to give the ages of the members of the Neidens family, and other matters of family history. The extract from the record was made by the pastor just before the family left Russia. It was made at the instance of John Neidens, the father of Mollie, and in his presence. The body of the extract was written in German, and the attached certificate made by the pastor was in Latin. So much of it as related to Mollie's age was received in evidence, and translated to the jury. The document was not certified, nor authenticated in such a way as to make it receivable as an official record. It was not offered or admitted, however, as a copy of the parish record, but was received as a family record. Was it admissible as a matter of pedigree, or family history? It is argued that it was not the declaration of the Russian clergyman who made the document,

but that, as it was made at the request and in the presence of Mr. Neidens, it was in fact his entry and his declaration. If it be granted that it was his own act, still the entry and declaration were only .secondary evidence and are governed by the rules for the admission of such evidence. This class of evidence is admitted under certain restrictions because of necessity, and the improbability of the evidence's being false. On the ground of necessity it is received because the facts as to pedigree and relationship' cannot be shown by living witnesses after the lapse of many years, and, if family reputation were not admissible, in many cases the real facts could not be established. The improbability of falsehood is that at the time the entries or statements were made those who made them were acquainted with the facts; they had no reason to distort them, and if they had their falsity could easily have been detected and corrected at that time. In the admission of such entries or declarations there are limitations as to who may make them, and, also, as to the character of the declarations. Judge Elliott classifies the limitations as to the declarant as follows:

"(1) The declarant must be dead; (2) the declarant must be a legal relative; (3) there must be no desire actuating the declarant to make a false statement." (1 Ell. Ev. §364.)

He makes the following classification as to the declaration:

"(1) The declarations must be relevant to a matter of pedigree; (2) the information in the declarations must come from qualified persons; (3) the declarations must be *ante litem motam*. But the declarations are not limited to any particular form." (1 Ell. Ev. §369.)

Treating Mr. Neidens as the declarant, the one that made the entry, his declarations were not available, as he was alive and in court, and actually gave testi-

mony in regard to his daughter's age. Entries in family Bibles and registers may be received to prove the age of children, but they are only secondary evidence, and are necessarily excluded when better evidence may be produced.

In the case of *Robinson v. Blakely,* 4 Rich. (S. C.) 586, 55 Am. Dec. 703, it was held that a father's declarations, or his entries of the birth of his children in a family register, are not admissible in evidence where he is alive and competent to testify.

In the case of *Young v. Shulenberg,* 165 N. Y. 385, 388, 59 N. E. 385, 80 Am. St. Rep. 730, it was said:

"Pedigree is the history of family descent, which is transmitted from one generation to another by both oral and written declarations, and unless proved by hearsay evidence it cannot, in most instances, be proved at all. Hence, declarations of deceased members of a family, made *ante litem motam,* are received to prove family relationship, including marriages, births, and deaths, and the facts necessarily resulting from those events. . . . Before the declarations can be received, however, as evidence of pedigree, it must appear that the person making them was a member of the family and that he is dead, incompetent, or beyond the jurisdiction of the court."

The case of *People v. Mayne,* 118 Cal. 516, 50 Pac. 654, 62 Am. St. Rep. 256, was a conviction for rape upon a child under the age of fourteen years. In support of testimony as to her age there was offered in evidence an entry in a family Bible that was made by the mother, who was present at the trial and gave testimony as to her daughter's age. It was held that an entry in a family Bible is but a declaration made out of court, and not under the sanction of an oath; that it is hearsay evidence, and is not admissible where the person making it is alive and capable of being examined as a witness in the case. There was a further holding that a mother who has testified to the date of the birth of her child cannot be supported

or corroborated by an entry of such date made by her in the family Bible.

The case of *Greenleaf v. The Dubuque and Sioux City R. R. Co.*, 30 Iowa, 301, was an action to recover damages for personal injuries, and, as the age of the injured person was an element in determining the amount of damages, the plaintiff was permitted to show the date of birth from an entry in the family Bible. This ruling was held to be error, upon the ground that it had not been shown that the person who made the entry was dead. Authorities of the same purport are: *Smith v. Brown*, 8 Kan. 608; *Shorten v. Judd*, 56 id. 43, 42 Pac. 337, 54 Am. St. Rep. 587; *State v. Snover*, 63 N. J. L. 382, 43 Atl. 1059; *Campbell v. Wilson*, 23 Tex. 252, 76 Am. Dec. 67; *Smith v. Geer*, 10 Tex. Civ. App. 252, 30 S. W. 1108; *People v. Sheppard*, 44 Hun, 565; *Leggett v. Boyd*, 3 Wend. 376; *Dupoyster v. Gagani*, 84 Ky. 403, 1 S. W. 652; 22 A. & E. Encycl. of L. 644; 1 Greenl. Ev. §104; 1 Whart. Ev. §208; 2 Tayl. Ev. §641.

The age of the prosecutrix was a very important feature of the prosecution. Although the greater part of the testimony appears to support the claim of the state as to her age, there was testimony tending to show that she was more than eighteen years of age when the offense was committed, and, also, testimony that tended to contradict that given by herself as to her age. How much weight may have been given to the copy of the parish record cannot now be told. Being a part of a formal church record, made by the pastor of the church, more weight may have been given to it by the jury than to the testimony of living witnesses. At any rate, we are unable to say that it was without material effect, or without prejudice. The judgment is, therefore, reversed and the cause remanded for a new trial.

All the Justices concurring.