BROWN *et al.* v. FIRST NATIONAL BANK OF TEMPLE.

No. 1514. Opinion Filed January 28, 1913.

Rehearing Denied April 8, 1913.

1. **APPEAL AND ERROR**—Time for Objections—Form of Verdict. No objection having been made to the form of the verdict until the filing of the motion for a new trial, and no specification of error raising such objection having been presented in this court until on the hearing of the petition for rehearing, held, that such defect or irregularity, if any existed in the form of the verdict, was waived.

2. **PARTNERSHIP**—Bills and Notes—Use of Firm Name—Liability of Corporation. One partner cannot bind his copartner by any contract not reasonably within the scope of the partnership, unless with such copartner's knowledge and assent.

    (a) Such knowledge and assent must be established by evidence affirmatively showing it, or from which it may be clearly inferred.

    (b) Where one partner has subscribed the name of the firm to a note, payable to a bank, for money to be used for purposes not reasonably within the scope of the partnership, such purpose being then and there known to the officers of the bank, the other partner does not become liable as a matter of law to pay such note, to the extent of items included therein not reasonably within the scope of such partnership, by failing to express his dissent when demand of payment is made of him.

    (c) The mere fact that a partner, upon being informed that his copartner has given a firm note for items including his individual debt, does not deny his liability to that extent thereon, does not per se amount in law to a ratification or adoption of the note for the whole debt.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*

*J. T. Johnson, Judge.*

Action by the First National Bank of Temple against R. L. Brown and L. O. Montgomery, as partners. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*T. B. Orr, Stevens & Meyers,* and *Shartel, Keaton & Wells,* for plaintiffs in error.

*Hamon & Ellis,* for defendant in error.

WILLIAMS, J.   1.   This proceeding in error is to review a judgment in favor of the defendant in error, the First National Bank of Temple, wherein, as plaintiff, it sued R. L. Brown and L. O. Montgomery, as partners engaged in the ginning business. The jury returned a general verdict in favor of the plaintiff against said defendants, but without a finding against the partnership.   No objection on that ground was made at the time of the returning of the verdict.   In the motion for a new trial the assignment is made that the verdict is contrary to law.   For the first time in the petition for rehearing is the question in any form raised in this court as to this alleged defect or irregularity in the verdict.

In *Heaton v. Schaeffer,* 34 Okla. 631, 126 Pac. 797, in an opinion by Rosser, C., the syllabus is as follows:

"In a suit against a partnership, where only one member of the firm is served, it is error to render an individual judgment against the member served.   In such case judgment should be rendered against the firm, and such judgment could be enforced against the partnership property and the individual property of the member served."

The plaintiffs in error rely upon this authority for a reversal of this case.

In *Stanard v. Sampson et ux.,* 23 Okla. 13, 99 Pac. 796, the syllabus is in part as follows:

"A general verdict not having been returned, but answers to specific questions, both sides having filed and presented motions for judgment thereon, in the absence of a timely objection with proper exceptions, and the assigning of such action as error in a motion for a new trial, the same will not be reviewed here.

"When the special answers or findings were returned, the jurors each being polled *ad seriatim,* answered that the same as read by the clerk were his.   No objection was made by either party, or request, that such special findings or answers should be signed, and each party filed and presented a motion for judgment in his or their favor on such special findings.   *Held,* that this was a waiver of the irregularity in the foreman not signing the answers or findings as required by the statute."

In the opinion the court said:

"The plaintiff was entitled to have a general verdict returned; but, when he sat by, and permitted the general verdict to be dispensed with, and the answers to be returned into open court to the specific questions submitted, and to be recorded, without any objection, and afterwards filed a motion for judgment in his favor thereon, he cannot be permitted by such conduct to induce the court to commit an irregularity, and then speculate upon its result by seeking a judgment thereon in his favor, and be heard here on petition in error to complain, especially when there was no motion for a new trial filed and presented in the lower court seeking the correction of such alleged error. * * *"

. In *Wilson v. Durant*, 1 Ind Ter. 532, it is said:

"The appellants' motion in arrest of judgment was based upon the fact that the verdict of the jury, which is set forth in the foregoing statement, found 'the issues at law' in favor of the defendants. No exception was taken when the verdict was rendered, which was on March 14th, as to its form; and the court's attention was not called to it until the motion in arrest of judgment was heard, March 18th. * * * The counsel for appellants in this case insist that their clients are not in the attitude of persons who sit silently by and permit the court to commit error, but, on the contrary, they contend that, by proper motion and in apt time, they did all in their power to prevent the alleged error, and that the judgment should, therefore, be reversed. The record fails to disclose any objection to this form of verdict until four days after it had been rendered. If, at the time the verdict was rendered, counsel had called the attention of the court to the words 'issues at law,' the proper correction would doubtless have been promptly made by striking out the words 'at law,' and asking the jury whether the verdict as thus amended was their verdict. This not having been done, the trial court, having, as the judge certifies in the bill of exceptions, submitted to the jury a single and simple issue of fact, not an issue of law, might, without prejudice to the plaintiffs, treat the words 'at law' as surplusage, and enter a judgment according to the verdict viewed in this light. No error prejudicial to appellants was committed by the trial court in pursuing this course."

In the light of the foregoing authorities, it is not essential to determine whether, had the plaintiff in error at the time of the return of the verdict objected to its form and saved his exceptions thereto, the rendering of the judgment on the verdict in

such form would constitute error prejudicial to his rights, such as to bring about a reversal of this case.

2. The court instructed the jury as follows:

"The fact that a partnership is engaged in a particular trade or business being known, is sufficient notice to third persons of the limitations, which the nature and customs of that trade or business place upon the power of each partner, and third parties dealing with a partner in matters outside the scope of its usual business, to charge the firm therein, must show him to have possessed special authority so to act.

"Therefore, if you find that the plaintiff bank, or its active managing officers, knew the kind and character of business being carried on by Brown & Montgomery, and that advances or loans by way of overdraft were made to L. O. Montgomery for the purpose of purchasing bank stock, oil mill stock, opera house stock, and furnishing money in endeavoring to secure county-seat location, were not within the scope of the business, and that amounts for said purposes were included in the overdraft and later in the note sued on, before plaintiff can recover, it must be shown that the defendant, L. O. Montgomery, was authorized to make the said loans or receive said advancement and create the indebtedness accruing therefor, or that the defendant Brown afterwards ratified the acts of L. O. Mortgomery, as the term 'ratified' is hereinafter defined."

The defendant (plaintiff in error) R. L. Brown requested the court to give the following instruction:

"The mere fact that a partner, after knowledge that another partner has given a note in the name of the firm in a transaction outside the scope of the partnership business, keeps silent and does not repudiate the act, does not of itself amount in law to ratification or adoption. Ratification is in the nature of an affirmative act, which in such a case cannot be established by a mere omission to avow. The partner is not bound, as a matter of law, to deny his liability, until he is prosecuted."

This instruction was refused, and exception saved. The general charge to the jury does not substantially include or cover this instruction.

In *Reubin v. Cohen et al.,* 48 Cal. 545, it is said:

"At the instance of the plaintiff, the court below instructed the jury 'that if Sperling was informed of the fact of the giving of these notes by his co-partner, Cohen, in the name of the firm, and omitted to repudiate or disaffirm, within a reasonable

time, what had been done by Cohen, he will be held to have ratified and adopted what he, Cohen, had done in the firm name.'

"The indebtedness for which the notes were given was the indebtedness of Cohen in the first instance, and not that of the copartnership firm of Cohen & Sperling. The instruction, assuming as it does that Sperling did not assent to the transaction at the time the note was delivered, and, of course, that he was not then bound thereby, nevertheless asserts the rule of law to be that, if he was afterward informed of the fact that the firm notes had been so given he would become bound thereby, unless he should thereupon, or within a reasonable time, 'repudiate or disaffirm' them. It may be conceded that his failure to object, under such circumstances, would be evidence tending in some degree to show assent upon his part to the giving of the notes, and so the jury were substantially told in the instruction next preceding the one we are now considering. But to say that a mere failure to actively repudiate the transaction amounts *per se* in point of law, to a ratification or adoption of the notes, is unwarranted by recognized principles defining the powers and obligations of copartners."

In *Barnard et al. v. The Lapeer and Port Huron Plank Road Co.,* 6 Mich. 274, it is said:

"No rule is better settled than that one partner cannot bind his copartner by any contract not within the immediate scope of the partnership, unless with such copartner's knowledge and consent. Each partner is an agent for all the members of the firm in the transaction of all business of such firm; but as to matters foreign to such business, he is regarded as a stranger. The general business of the firm being that of manufacturing lumber, and the ownership of land as incident thereto, the subscription to stock in a corporation, or to articles of association for the creation of one, was not an incident to such partnership. Incidental benefits would not authorize one partner to bind his fellow, and no authority so to bind him is shown.

"And the knowledge and assent required to bind the copartner must be established by evidence affirmatively showing it, or from which it may be clearly inferred. This is sought to be established from the fact that assessments were made, and their payment demanded of the firm, which were unresponded to; and it is urged that it was Barnard's duty, upon such demands, to repudiate any interest in the company, and that his silence should be construed into a recognition of his relation as a stockholder. Now, a demand, either through the mail, or personal, is sufficient to bind a stockholder, but not to create one. If the person of

whom demand is made be not one, it is not his duty to disclaim the character of stockholder; it is enough that he does not respond to such demand. The simple admission that demand was duly made of the firm, is not one of a personal demand of Barnard, nor is of anything more than a fact—its effect being a question of law. There is no evidence, nor any admission, in the case, that knowledge of the demand ever came to Barnard; and certainly none that he ever, by any word or act, recognized any connection with the company."

See, also, to the same effect, *Mercein v. Andrus & Mack,* 10 Wend. (N. Y.) 463; *Van Dyke v. Seelye et al.,* 49 Minn. 557, 52 N. W. 215; *Johnson v. McClary et al.,* 131 Ind. 105, 30 N. E. 888.

The court having instructed the jury that before the plaintiff (defendant in error) could recover against the plaintiff in error, Brown, it must be shown that the plaintiff in error, L. O. Montgomery, "was authorized to make the said loans or receive said advancements and create the indebtedness accruing therefor, or that the defendant Brown afterwards ratified the acts of L. O. Montgomery, as the term 'ratified' is hereinafter defined," when the plaintiff in error requested the foregoing instruction as to ratification, the same should have been given. Nowhere in the general charge does said requested instruction as to ratification or adoption seem to have been substantially covered.

The defendant in error insists that the clause of the instruction:

"The mere fact that a partner, after knowledge that another partner has given a note in the name of the firm in a transaction outside the scope of the partnership business, keeps silent and does not repudiate the act, does not of itself amount in law to ratification or adoption. Ratification is in the nature of an affirmative act, which in such a case, cannot be established by a mere omission to avow,"

—is erroneous, in that such omission to avow may create an estoppel. It may be that under a proper state of facts an omission to avow the want of authority of the other partner to incur such liability might create an estoppel, where such silence caused the party to make further advancements or loans or to forego taking

action for his protection, when such delay or inaction would prejudicially affect his rights against the other partner. But, under the record in this case; such a question of estoppel is not presented, and the question is not here determined.

As to all money loaned or advancements made to said partnership through L. O. Montgomery in due course of business, the said R. L. Brown was liable therefor, though it was afterwards diverted from said business by Montgomery, unless the bank at the time of making the loan had knowledge that it would be so diverted; and as to such terms, where there was no conflict in the evidence, the jury should have been instructed to find in favor of the plaintiff. As to items where there was a conflict in the evidence, the same should have been submitted to the jury under appropriate instructions for a finding. As to the advancements that were made for matters outside of the scope of the partnership, with the knowledge of the bank that it was not to be used within such scope of said partnership, as to whether or not a ratification was made by the plaintiff in error, the same should also have been submitted under proper instructions. If, with the money that was advanced by the bank, with the knowledge that it was to be used to buy oil mill stock and bank stock, such stock was bought and issued in the name of the partnership or firm and the evidence showed that the plaintiff in error knowingly accepted the fruits of such transaction, these were matters that the jury should take into consideration in determining the ratification or liability on his part. Did he accept the fruits of said stock, or did he repudiate the purchase of the same and the holding of the same in the partnership name when the knowledge came to him? If he did the latter, he did not become owner thereof, and the partnership would have held the title as trustee for the other partner.

The letter of June 26, 1908, to J. C. Tandy, Temple, Oklahoma, who appears to have been vice-president of the defendant in error bank, should have been admitted in evidence. In that letter the plaintiff in error says:

"He (plaintiff in error, L. O. Momtgomery) has done everything against my advice and, of course, he sees his error now. This fall I will have a bookkeeper that I can depend on to give

me a detail statement of the business every week. We are in the gin business and not in the seed cotton business, nor any other kind that I know of, and when it comes to losing money it is not me.

"I went into the gin business only with him and he had no right to use the company otherwise. Mr. Tandy, you will have to help look after Lee, for I know he is a good man for your bank."

It was competent for the purpose of determining whether or not the plaintiff in error, Brown, ratified the act of L. O. Montgomery in borrowing money from the defendant in error bank to be used out of the scope of said partnership business.

It follows that the judgment of the lower court must be reversed, and the· cause remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.