## GILLUM v. ANGLIN.

No. 2882. Opinion Filed May 12, 1914.

Rehearing Denied January 30, 1915.

(145 Pac. 1145.)

1. INDIANS—Indian Lands—Allotment—Ascend. Upon the death of mixed blood minor children of the Choctaw Tribe of Indians, the fee in their allotments ascends to the parent of tribal blood, and not to the parent who has become a citizen of the tribe by virtue of an intermarriage.

2. CHAMPERTY AND MAINTENANCE—Deeds—Adverse Claimant. A deed to lands which have been held by an adverse claimant in open, notorious, and exclusive possession and control for a period of four or five years next prior to the deed, such adverse claimant having collected all the rents and profits, and having openly and notoriously claimed an estate in such lands under the provisions of chapter 49, Mansfield's Dig. of Ark. [sections 2522-2545], is champertous as between the grantee and such adverse claimant.

3. PLEADING—Answer—General Demurrer. Where an answer contains statements of facts which of themselves constitute a defense to plaintiff's action, it is error to sustain a general demurrer to such answer.

(Syllabus by Harrison, C.)

*Error from District Court, Hughes County;*

*Tom H. Fancher, Special Judge.*

Action in ejectment by W. Thomas Anglin against H. Tillman Gillum and others. Judgment for plaintiff, and defendant Gillum appeals. Reversed.

*Lewis C. Lawson,* for plaintiff in error.

*Warren & Miller* and *Roberts & Harris,* for defendant in error.

Opinon by HARRISON, C. This was an ejectment suit brought by W. T. Anglin against H. T. Gillum for possession of certain tracts of land aggregating about 670 acres. The material facts in the controversy are substantially as follows: H. T. Gillum was a noncitizen, but had married a woman of Choctaw blood. They lived together as man and wife for a number of years, during which time four children were born to them. However, they finally separated and were legally divorced, and afterwards the wife, Emaline, married a man by the name of Dillbeck. In the meantime the making up of the rolls for the Five Civilized Tribes had taken place, and H. T. Gillum, by virtue of his being an intermarried citizen, was admitted to the rolls and allowed an allotment as other members of the tribe. He chose his allotments, and, pursuant to acts of Congress and provisions of the treaty with the Choctaw Indians, chose allotments for each of his four minor children by his Indian wife. Two of the children had died before allotments were chosen for them, but same were afterwards selected by their father. Another one of the children died after the allotment had been chosen for it by its father, whom, it is not denied, had been duly appointed administrator for the purpose of selecting allotments for each. After selection and award, the father took charge of the allotments of the deceased children, held possession of them, improved them and put them, at least a great portion of them, in cultivation, something like 500 acres, and held possession of same upon the theory that, under the provisions of chapter 49, Mansfield's Digest of the Statutes of Arkansas, which was then in force in the Indian Territory by act

of Congress, he inherited title to the lands in question, or at least an undivided one-half interest in same. After the passage of the act of Congress of April 26, 1906 (34 Stat. 137, c. 1876), removing restrictions from the sale of inherited lands in the hands of mixed blood heirs, Emaline Dillbeck, joined by her husband, S. M. Dillbeck, acting upon the theory that the lands of her deceased children ascended to her by reason of her Indian blood, and that their allotments came to them through and by virtue of their father's intermarriage with her, and that therefore she inherited their allotments, executed a warranty deed conveying said lands to W. T. Anglin, the defendant in error here. Whereupon, in August, 1909, he, Anglin, brought this ejectment suit against H. T. Gillum and his tenants.

The defendant, H. T. Gillum, answered, maintaining that the land in question either descended to Albert Gillum, the surviving child, and that therefore he would have a life estate in same, or that it passed clear to him and his former wife, and that therefore he had an undivided one-half interest in the fee in same as the heir of his three dead children, and set up the further defense that, as he had been in full and complete and undisturbed possession and control of such lands since the allotments had been taken, and had collected all the rents and profits therefrom during all those years from the time of taking the allotments to the date of the execution of the deed by the Dillbecks to Anglin, therefore, holding and claiming same upon the theory that he had either a one-half interest in the fee or a life estate in the same, either of which was adverse to the interests sought to be conveyed to Anglin in the warranty deed from the Dillbecks to Anglin, such deed was champertous and void as between Anglin and him. The court sustained a demurrer to Gillum's answer on the theory that it failed to state a defense, and the cause comes here on a transcript.

There are three material propositions of law involved in the case: First, whether the lands of those deceased children descended in part to the father by virtue of his intermarriage, or

whether they descended in whole to the mother by virtue of her Indian blood; second, whether the deed was champertous; third, whether the court erred in sustaining the demurrer to Gillum's answer.

On the first proposition, as to whether the father or mother inherited these lands, it appears to us that enough has been said in the case of *Shulthis v. M'Dougal,* 170 Fed. 529, 95 C. C. A. 615, to make the question clear as to which of the parents would inherit and to settle this phase of the controversy in the case at bar. The same application of chapter 49 of the Arkansas Statutes was sought to be made in the Shulthis case as in the case at bar; the difference in the Shulthis case and the case at bar being that in that case it was the father who was the Indian by blood and the mother who was a noncitizen, and the controversy was as to who took the lands of their deceased children; also the further difference that these were Creek Indians, while those in the case at bar were Choctaws. The reasoning in that case by Amidon, district judge, who rendered the opinion, is clear and forceful, but, as both the reasoning and conclusions reached in such case are familiar to the members of the bar who have had to deal with like questions, we shall merely cite such case as authority on this phase of the question in the case at bar. It was held in that case that the allotment of a deceased child went to the father by virtue of the father's tribal blood, and that a deed to such allotment from the father was valid.

An effort is made by counsel for plaintiff in error to distinguish the case at bar from the Shulthis case because the Shulthis case was a Creek Indian case, and that under section 6 of the Supplemental Agreement with the Creek Indians (Act June 30, 1912, c. 1323, 32 Stat. 501) non-Creek citizens were expressly prohibited from taking Creek lands by inheritance or otherwise so long as there was a Creek heir to take it, and that no such treaty provision was made between the United States and the Choctaw tribe. But the decision in the Shulthis case is not based upon this ground. It is based solely upon the

ground that the lands of the Creek Tribe belonged to such tribe as a tribe—belonged to them in common as a society or tribe—that is, prior to allotments; that when the time for allotment came, the minor children of members of the tribe took their allotments, not by virtue of their being the offspring of an intermarried citizen (mother), but by virtue of their Indian blood which came through their father; and that in case of death of such minor heir its estate ascended to the parent through and by virtue of whose tribal blood such minor acquired the right to an allotment. This being a federal question, we feel bound by the doctrine announced by the federal courts. It follows, therefore, that the fee in the allotments of her deceased minor children went to the mother, and that after the act of April 26, 1906, took effect she could convey a valid title to such allotments. See, also, *McKee v. Henry,* 201 Fed. 74, 119 C. C. A. 412.

Also, in the case of *Pigeon et al. v. Buck,* 38 Okla. 101. 131 Pac. 1083, this court, in following the doctrine announced in the Shulthis case, *supra,* wherein the same question of descent and distribution of Indian lands are involved, said:

"Many titles to lands on the eastern side of this state have been acquired on the strength of this decision, and to such an extent that the same has become a rule of property."

And *Roberts v. Underwood,* 38 Okla. 376, 132 Pac. 673, was decided under the rule announced in *Pigeon v. Buck, supra.*

The next question is whether the deed to Anglin was champertous. It was alleged in Gillum's answer that he held the land upon the theory that he had the right to possession of same either upon the ground that he had inherited the one-half undivided interest in the fee, or upon the ground that, if it descended to the surviving child, he still had a life estate in same, and that upon such theory he was holding such lands openly, notoriously, and exclusively at the time the deed was taken, and that such possession, open, notorious, and exclusive as it was, was adverse to the interest and rights sought to be conveyed in the deed from the Dillbecks to Anglin. The deed in question

was a deed of general warranty. Under section 1162, Rev. Laws 1910, the title and rights which are conveyed under a warranty deed are as follows:

"A warranty deed made in substantial compliance with the provisions of this chapter shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same; and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

Now, Anglin, the plaintiff below, demurred to Gillum's answer. He therefore admitted the facts pleaded in the answer; that is, he admitted that Gillum was claiming the land in question and holding and exercising complete and exclusive control of same upon the theory that he either inherited an undivided one-half interest in the fee or a lifetime estate in same. This being true, it follows that at the time Anglin took the deed Gillum was holding possession of the land adversely to the rights and interests sought to be conveyed in such deed. The deed therefore falls under the rule announced in *Nicholas V. Bilby v. John W. Gilliland* (on rehearing) 41 Okla. 678, 139 Pac. 988, *Miller v. Fyer,* 35 Okla. 145, 128 Pac. 713, and *Ruby v. Nunn,* 37 Okla. 389, 132 Pac. 128, and is champertous and void as between Anglin and Gillum. It also follows that, such deed being champertous and void, the allegations in the answer to that effect constituted a defense to plaintiff's action, and that the court erred in sustaining the demurrer. This disposes of the third proposition.

It is contended, however, that the surviving minor child, Albert Gillum, inherited the lands in question, and that the court committed numerous errors, which are presented and ar-

gued in plaintiff in error's brief, that were prejudicial to the rights and interests of such minor. But the conclusions which, under the authority of the Shulthis case, we feel impelled to follow, preclude all rights of such minor heirs in this controversy, and adjudge the fee in such lands in the mother. We therefore refrain from passing upon the assignments of error in reference to the rights of the minor, as the action and holdings of the court in this regard are wholly immaterial in the determination of this case. The minor had no interest in the fee at the time the deed was executed. The title to the fee was in the mother, but the deed was clearly champertous, because it purported to convey rights and interests which were claimed and held possession of adverse thereto by Gillum. Hence, while we do not feel authorized to pass upon the question as to whether the rights of the mother or of Anglin might be properly protected in another action, yet we are constrained to hold from the record before us that the judgment should be reversed, and the cause remanded for judgment in harmony with these conclusions.

The judgment is reversed.

By the Court: It is so ordered.