# HARRIS *et al.* v. HART.

No. 4221.  Opinion Filed July 13, 1915.

On Second Pettiion for Rehearing, October 12, 1915.

(151 Pac. 1038.)

1. **MAJORITY VERDICT.** Section 19, art. 2, of the Constitution, provides that, in all civil cases and criminal cases less than felony, three-fourths of the whole number of jurors concurring shall have power to render a verdict, and requires that when a verdict is rendered by less than the whole number of jurors the verdict shall be in writing and signed by each juror concurring therein.

2. **TRIAL—Majority Verdict—Irregularity—Waiver.** Where a majority verdict is returned by less than the whole number of jurors, and their verdict read in open court by the clerk, and the jurors concurring therein in answer to questions by the court say that same is their verdict and was signed by them, and no objection is made that the name of one of the jurors was signed by mark and that the person signing the name of said juror did not sign his name thereto as a witness, the irregularity in the signature is waived.

3. **MOTIONS—Order—Effect.** An order in probate made by the United States court in the Indian Territory upon final report of a guardian in a guardianship matter that the minor, who was a Cherokee freedman, was of a certain age at the date of the order, is not competent evidence in an action between grantees of said minor to establish the age of said minor at the date of the different instruments relied upon by the parties to the ejectment suit.

4. **EVIDENCE—Competency—Age of Person.** A person is a competent witness to testify as to his own age and the date of his birth, even though his parents be living and within the jurisdiction of the court.

5. **APPEAL AND ERROR—Ground for Reversal—Admission of Evidence.** The admission of incompetent evidence, tending to prove a material issue in the case, that appears to have prejudiced the rights of the party objecting thereto, is reversible error.

## ON PETITION FOR REHEARING.

6. **APPEAL AND ERROR—Petition for Rehearing—Assignment—Notice.** Under Rule 9 (38 Pac. vi, 137 Pac. ix), a case may be considered on petition for rehearing and the former opinion reversed without assigning said petition for hearing and without

notice by the clerk to the parties to said cause. It is only when a rehearing is granted that this is required.

7.   **CHAMPERTY AND MAINTENANCE—Date of Champertous Deed—Adverse Possession—Pleading and Proof.** When the pleadings fail to allege, and the evidence fails to show, that at the date of a deed claimed to be champeitous the party making such claim, or his grantors, were in the adverse possession of the premises described therein, such claim cannot be sustained.

8.   **TRIAL—Presentation of Question Below—Exception—Evidence.** Where, in the absence of the jury, objection to the admission of certain evidence was overruled, and the court stated that an exception would be allowed, and thereafter the jury were returned into court and the evidence introduced without further objection or exception to the ruling of the court thereon, this will be sufficient to preserve such objection.

(Syllabus by the Court.)

*Error from District Court, Craig County;*
*Preston C. Davis, Judge.*

Action by B. L. Hart against F. S. Harris and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Robert F. Blair* and *W. O. Rittenhouse,* for plaintiffs in error.

*W. H. Kornegay,* for defendant in error.

HARDY, J.   Defendant in error, B. L. Hart, brought suit in the district court of Craig county, for the possession of certain lands, alleging that he was entitled to the immediate possession thereof, and deraigned his title as follows:   That on November 14, 1905, one Allie Nash, a Cherokee freedman, executed a warranty deed, conveying said lands to the Campbell-Ratcliff Land Company; that on January 13, 1906, said Nash executed another warranty deed to said land company; and on May 11, 1906, said land company conveyed said lands to the Creek Land & Improvement Company, which last-named company on June 25, 1910, conveyed said lands by warranty deed to

said B. L. Hart.   Defendant Wilson filed separate answer, admitting possession of said premises, but alleged simply that he was the tenant of his codefendant, F. S. Harris. Defendant Harris filed answer, alleging that at the time of the execution of the deed by the said Allie Nash to the Campbell-Ratcliff Land Company, November 14, 1905, said Allie Nash was a minor; and that at the time of the execution of the deed of date January 13, 1906, said Allie Nash was a minor; that the deed from the Campbell-Ratcliff Land Company of date May 11, 1906, to the Creek Land & Improvement Company, was void for the reason that the said land company had no right or title in said lands; that the deed from the Creek Land & Improvement Company to the defendant in error, B. L. Hart, of date June 25, 1909, was void for the same reason; and that the deed from the said Nash to the defendant in error, B. L. Hart, of date December 15, 1909, was procured for the purpose of ratifying all of the above-mentioned deeds, and was therefore void.   Defendant Harris further alleged that he was the owner of the legal and equitable estate in said premises, having purchased same from the allottee, Allie Nash, by warranty deed, dated June 9, 1909; and prayed that plaintiff in said suit take nothing, and that all of the said above-mentioned deeds under which defendant in error claims be canceled and declared clouds upon the title of defendant Harris.   Reply was filed to this answer, and upon the issues thus joined the case was tried to a jury on the 28th day of November, 1911, resulting in a verdict in favor of defendant in error, B. L. Hart, upon which verdict judgment was rendered, and this appeal prosecuted.

The first proposition presented in the brief is that, three-fourths of the whole number of jurors having re-

turned a verdict, and the signature of one of such jurors appearing to have been made by mark, and said signature not having been witnessed as required by statute, the verdict is void and the court was without authority to receive same or to render judgment thereon.

The verdict was signed by nine jurors, and opposite the name of W. T. Rafferty, one of the jurors, appeared this notation, "His X mark." No attesting witness to such signature appears thereon in the usual form. Section 19, art. 2, Const., provides:

"In civil cases, and in criminal cases less than felonies, three-fourths of the whole number of jurors concurring shall have power to render a verdict. In all other cases the entire number of jurors must concur to render a verdict. In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing and signed by each juror concurring therein."

Section 2945, Rev. Laws 1910, defines "signature" to be as follows:

" 'Signature' or 'subscription' includes mark, when the person cannot write, his name being written near it, and written by a person who writes his own name as a witness."

Construing this section of the statute, the Supreme Court of Oklahoma Territory, in *Sivils v. Taylor*, 12 Okla. 47, 69 Pac. 867, held, where the name of a person who signed by mark was not witnessed in the manner required by this section, the same did not constitute a signature within the meaning of the statute, and this opinion was followed in *Sims v. Hedges*, 32 Okla. 686, 123 Pac. 155, and in *Walker Bond & Co. v. Purifier et al.*, 32 Okla. 844, 124 Pac. 322. Plaintiffs in error urge that this statute and these decisions are controlling in this case,

and that the verdict was a nullity and therefore could form no basis for a judgment to be rendered thereon. We cannot agree with this contention. In the first place, there is nothing to indicate, other than the notation, that the signature of the juror Rafferty was not in his own handwriting; and, even if the name of the juror was written by another, it does not appear that it was not written in the presence of all the jurors and by one of the jurors who also signed his name to the verdict. The record shows that, when the jurors returned into open court with their verdict, they were asked by the court whether they had agreed upon a verdict, and answered in the affirmative, and thereupon the verdict was read in the presence of the jury, and the court then said:

"Gentlemen of the jury, is this your verdict that you have heard read in your presence and hearing, your verdict in this case?" Answer by the jury: "Yes, sir." By the Court: "You gentlemen whose names are signed to it each signed it, did you?". By the jury: "Yes, sir."

We think these facts present a very different case from that of any of the decisions referred to, and which are relied upon by plaintiffs in error. A case more nearly in point, to our mind, is the case of *Stanard v. Sampson*, 23 Okla. 13, 99 Pac. 796. In that case special interrogatories were submitted to the jury and answers were returned, and the interrogatories were read in the presence and hearing of the jury, and the jurors were asked by the trial court if the answers written by them immediately following each interrogatory were their finding, and each of the jurors answered in the affirmative. Thereupon the special findings were received by the court and ordered recorded, and the jury discharged, without any objection being taken by either side. The answers to the special

interrogatories were not signed as required by section 5011, Rev. Laws 1910. In the case of *City of Kingfisher v. Altizer*, 13 Okla. 127, 74 Pac. 107, the Supreme Court of the territory of Oklahoma, in passing upon a question similar to the one in the case of *Stanard v. Sampson, supra*, held that a failure of the jury to sign the answers was fatal, and therefore their answers constituted no part of the verdict and could not be considered for any purpose; but this court, in the case of *Stanard v. Sampson, supra*, declined to follow the case of *City of Kingfisher v. Altizer*, and quoted with approval from the case of *Northern Pacific R. Co. v. Urlin*, 158 U. S. 277, 15 Sup. Ct. 842, 39 L. Ed. 977, the language of Mr. Justice Shiras, who wrote the opinion, as follows:

"The contention that the judgment below was invalid because the verdict of the jury was not signed by the foreman, as required by a section of the Code of Montana, is, in our opinion, without merit. The record discloses that when the verdict was rendered, at the request of the defendant, the jury was then and there polled by the clerk, and each of said jurors answered that the verdict as read was theirs, whereupon the plaintiff moved for judgment in accordance with said verdict, the motion was granted, and judgment was ordered accordingly. No objection was made, or request that the verdict should be signed was then made by the defendant, and we think that the court below was justified in treating the irregularity, if such it were, as having been waived."

And after quoting the above language, Mr. Justice Williams proceeds to state the views of this court as follows:

"The settled weight of authority supports the rule announced by the Supreme Court of the United States in the above case, which was the controlling tribunal as to the decisions of the Supreme Court of the territory of

Oklahoma at the time the decision was rendered in the case of *City of Kingfisher v. Altizer, supra. Gurley et al. v. O'Dwyer,* 61 Mo. App. 349; *Morrison v. Overton,* 20 Iowa, 465; *Patterson v. Murphy,* 63 Ga. 281; *Burton v. Bondies,* 2 Tex. 203; *Hardy v. State,* 19 Ohio St. 579; *Berry v. Pusey,* 80 Ky. 166. We conclude that, had objection been made to the receiving of the answers, on the ground that they were not signed by the foreman or had request been made that the same be signed, and the court had overruled such objection or denied such request, in either event it would have been error; that answers to special interrogatories submitted to and returned by the jury not signed, over the timely objection of either party, cannot be considered as constituting a part of the verdict, and cannot legally be considered for any purpose. But when neither objection to the receiving of the same unsigned, nor any request that the same be signed, is made, the plaintiff waived the right to complain of such alleged error in this court."

See, also, *Brown et al. v. First National Bank of Temple,* 35 Okla. 726, 130 Pac. 140.

It is not claimed that the verdict was not the verdict of the juror Rafferty, nor is pretense made that he did not concur therein, nor is any objection made other than the mere technical objection that the person who wrote the name of the juror did not also write his own name as a witness thereto. The mere notation itself is not sufficient to show that the juror Rafferty did not write his own name in the face of the statement in the record that in answer to the inquiry of the court the jury answered, each of them, that they signed the verdict; and if it were true that the juror could not write his name, and that same was written by a person other than himself, yet when the verdict was returned into open court, and in response to the questions of the court the jurors answered

that they concurred in the verdict so returned, and no objection was then and there made, we think that the irregularity, if it be such, was waived, and certainly could not be urged to defeat the judgment rendered thereon, unless it be made to appear in some way that prejudice has resulted therefrom; and from this record there is no showing made that it was not the verdict of the juror, nor is any prejudice apparent on the record. The objection to the verdict cannot be sustained.

The second proposition urged is alleged error in admitting in evidence the second deed from Allie Nash to the Campbell-Ratcliff Land Company, and also in admitting the deed from the said Nash to defendant in error Hart, dated December 15, 1909; it being contended that the first deed being void, because of the minority of the grantee at that time, these second deeds were an attempt to ratify the first deed, and therefore were void and not admissible in evidence.

Under the third proposition, it is claimed that the best evidence of the age of the allottee was the testimony of the father and mother, who were shown to be living, and that the court erred in admitting in evidence the judgment of the United States court in the Indian Territory on the question of the age of said allottee. These two questions are closely related, and the consideration of one necessarily involves the other, and we shall therefore consider the two together.

The deeds are regular on their face, and appear to have been regularly acknowledged and recorded, and were entitled to be admitted in evidence if otherwise valid. Section 15 of the Cherokee Treaty, 32 Stat. at Large, 716, provided that all lands allotted to members of said tribes

should be alienable after the expiration of five years from the issuance of patents; and, construing this provision of the treaty, this court has held that these lands were not alienable prior to the expiration of five years after the issuance of patents. *Allen v. Oliver,* 31 Okla. 356, 121 Pac. 226. The date of the patent is not apparent in this case. It is conceded that by the Act of April 21, 1904, c. 1402, 33 Stat. 204, the restrictions upon the lands of the allottee Allie Nash were removed unless he were a minor; and if a minor, at the date of the execution of the deed of November 14, 1905, to Campbell-Ratcliff Land Company, the deed would be void and would be incapable of ratification, and his grantees in his deed made after he reached his majority would be entitled to assert the invalidity of such deed against their own conveyance. *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554; *Bragdon v. McShea,* 26 Okla. 35, 107 Pac. 916; *Alfrey v. Colbert,* 168 Fed. 231, 93 C. C. A. 517. It then became a question of fact as to whether or not the allottee, Allie Nash, was 21 years of age on November 14, 1905, the date he executed said deed to the Campbell-Ratcliff Land Company; and, if he was of such age on that date, the deed would be valid. The deed relied upon by plaintiffs in error was dated on the 9th day of June, 1909, and there is no controversy as to the fact that at the time this deed was executed he was of full age, and capable of conveying title to his property. At the trial the allottee, Allie Nash, was on the witness stand, and testified that his birthday was February 2, 1884; that he knew this only from what his parents had told him; and that both his father and mother had told him this was the correct date. Plaintiff also offered in evidence a decree of the United States court in the Indian Territory, in probate, sitting at Vinita,

dated the 11th day of June, A. D. 1907, which was rendered in a guardianship proceeding then pending, wherein the guardian had requested the court that his final report be approved and that he be discharged, and alleging that a mistake had been made in the ages of his wards, as given in his petition for appointment; and, upon a hearing of this petition, the court rendering judgment whereby it decreed, "that the ages of said minor children should be, and the same are hereby corrected as follows: * * *' Allie Nathan Nash, born February 2, 1884," and discharging the guardian, and in its decree finding that at the date thereof the allottee herein was over the age of 21 years. The plaintiffs in error, over objection, offered in evidence as to the age of the allottee the testimony taken before the Commission to the Five Civilized Tribes at the time of his enrollment, and in addition thereto offered in evidence the testimony of several persons who testified to having known the parents of the allottee, Allie Nash, prior to and at the time of their marriage, and having known of the time of his birth, and fixing the same at some time in the year 1888. The question of fact was submitted to the jury, and the jury found in favor of the plaintiff in the case, thereby finding that at the date of the execution of plaintiff's deed, to-wit, November 14, 1905, said Allie Nash was of full age.

The judgment of the United States court in the Indian Territory was rendered in a guardianship proceeding, where none of the parties interested here were parties thereto, and we do not think same was admissible for the purpose of proving the age of the allottee in the present proceedings, as between the parties hereto. *Youst v. Willis,* 5 Okla. 413, 49 Pac. 1014; *Hawkins v. Overstreet,*

7 Okla. 277, 54 Pac. 472; 2 Black on Judgments, section 534 *et seq.*

It has already been seen that at the trial Allie Nash, the allottee, testified to his own birthday as being the 2d day of February, 1884. He was on the witness stand, and was before the jury, and they saw him and heard his testimony, and could determine from his size and his apparent age as to whether or not his testimony was probably true. That this testimony was competent is held in the case of *Stevens v. Elliott et al.,* 30 Okla. 41, 118 Pac. 407, where it is said:

"Plaintiff in error contends that the testimony * * * as to her age, because she did not know the facts of her own personal knowledge, was of no value. This is not the law. 16 Cyc. 1124; *Hill v. Eldridge,* 126 Mass. 234; Tyler on Infancy, p. 205. We deem the testimony offered by plaintiff as to her age of much higher and more convincing character than that offered by defendant Stevens."

That such testimony is permissible even when based upon hearsay is sustained by the authorities and by the text-writers, a few of which we cite herein; and this is true, even though the father and mother be living and present in court at the time: 2 Jones on Evidence, sec. 303; 2 Wigmore on Evidence, sec. 1493; 4 Chamberlayne on Modern Law of Evidence, sec. 2929; *State v. Miller,* 71 Kan. 200, 80 Pac. 51, 6 Ann. Cas. 58; *People v. Ratz,* 115 Cal. 132, 46 Pac. 915; *Central R. Co. v. Coggin,* 73 Ga. 689; *Comm. v. Stevenson,* 142 Mass. 466, 8 N. E. 341; *Cheever v. Congdon,* 34 Mich. 296; *Loose v. State,* 120 Wis. 115, 97 N. W. 526; *State v. Rackich,* 66 Wash. 390, 119 Pac. 843, 37 L. R. A. (N. S.) 760, Ann. Cas. 1913C, 312; *Morrison v. Emsley,* 53 Mich. 564, 19 N. W. 187; *Houlton v. Manteuffel,* 51 Minn. 185, 53 N. W. 541;

*State v. Best,* 108 N. C. 747, 12 S. E. 907; *Pearce v. Kyzer,* 84 Tenn. (16 Lea) 521, 57 Am. Rep. 240.

The testimony taken before the Commission to the Five Civilized Tribes upon the enrollment of the allottee, Allie Nash, introduced by plaintiffs in error, might have been competent had there been any issue as to the age of the allottee at the time of the deed to plaintiffs in error; but there was no controversy on this point, and the evidence was probably offered for the purpose of rebutting the testimony of the allottee, Allie Nash, as to his age. It has become firmly established by a long line of decisions of this court that the enrollment records of the Commission to the Five Civilized Tribes, which have been held to include the testimony taken at the hearing upon them, are not conclusive evidence as to the age of the allottee, where this fact is a material inquiry in reference to transactions that occurred prior to the passage and approval of that act, which was on the 27th day of May, 1908; and it has also been held that these records are not even admissible in evidence for the purpose of showing the age of an allottee as affecting a conveyance executed by him prior to the date of said act, where other evidence of a higher degree is at hand. *Williams v. Joins,* 34 Okla. 733, 126 Pac. 1013; *Rice v. Ruble,* 39 Okla. 51, 134 Pac. 49; *Rice v. Anderson,* 39 Okla. 279, 134 Pac. 1120; *Scott v. Brakel,* 43 Okla. 655, 143 Pac. 510; *Phillips v. Byrd,* 43 Okla. 556, 143 Pac. 684; *Freeman v. First National Bank,* 44 Okla. 146, 143 Pac. 1165; *Grayson v. Durant,* 43 Okla. 799, 144 Pac. 592; *Gilbert v. Brown,* 44 Okla. 194, 144 Pac. 359; *Cornelius v. Yarbrough,* 44 Okla. 375, 144 Pac. 1030; *Smith v. Bell,* 44 Okla. 370, 144 Pac. 1059; *Bucher et al. v. Showalter,* 44 Okla. 690, 145 Pac. 1143.

It thus appears that there was sufficient evidence to raise an issue of fact as to the age of the allottee on the date of the execution of plaintiff's deed on November 14, 1905, and upon this state of the record the admission of the other deeds in evidence was not error.

We have already seen that the admission of the decree of the United States court in the Indian Territory was erroneous, and as we are unable to say what effect the admission of this decree had upon the minds of the jury, or to what extent it may have influenced them in arriving at their conclusion, and as such evidence tended strongly to corroborate the evidence of the witness Allie Nash and to prove a material issue in the case, it apparently prejudiced the rights of plaintiffs in error; and for the admission of this evidence the judgment must be reversed, and the cause remanded for a new trial. *Meek v. Daugherty,* 21 Okla. 859, 97 Pac. 557; *Brison et al. v. McKellop,* 41 Okla. 374, 138 Pac. 154.

All the Justices concur.

### ON SECOND PETITION FOR REHEARING.

On the 13th day of July, 1915, on application for a rehearing, the former opinion was reversed, and this case remanded for error in the admission of certain evidence. Counsel for defendant in error, by second petition for rehearing, challenge the correctness of this holding, and also complain for the reason that they were not given notice under rule 9 of a rehearing of said cause.

There was in fact no rehearing granted in this case, but same was reversed on petition for rehearing by the plaintiffs in error, to which no response was filed. Rule 9 does not bear the construction for which counsel contend. The latter part of said rule is as follows:

"No oral argument will be allowed on an application for rehearing except upon order of the court, but if such application is granted the case shall be assigned for rehearing and the clerk shall notify both parties or their counsel of the date when such rehearing will be had, and such time may be given for argument or brief as the court shall allow."

This rule does not prohibit the court considering and reversing its opinion on an application for rehearing. Should a rehearing be granted, in that event the case should be assigned and notice given in accordance with said rule.

The next reason urged why the opinion reversing the cause should not stand is that the deed of plaintiffs in error was champertous and void, and that judgment should have been instructed for defendant in error, which proposition it is claimed was not considered by the court but was entirely overlooked.

The reply of defendant in error to the answer of plaintiffs in error, in which it was sought to plead this question, does not contain any allegation that defendant in error or his grantors were in adverse possession of the land at the time of the deed taken by plaintiffs in error, which it is claimed is void. Neither is there any evidence in the case showing that the defendant in error was in adverse possession at said time. On the contrary, the evidence is that at the time plaintiff in error Harris took the deed in question he examined the land, found no one in possession, and he testified that same was vacant.

In order to avail himself of this statute, it would be necessary to plead and prove adverse possession in the party, or his grantors, who asserts the invalidity of the deed. *Powers v. Van Dyke*, 27 Okla. 27, 111 Pac. 939,

36 L. R. A. (N. S.) 96; *Miller v. Fryer,* 35 Okla. 145, 128
Pac. 713; *Ruby v. Nunn,* 37 Okla. 389, 132 Pac. 128;
*Bilby v. Gilliland,* 41 Okla. 686, 137 Pac. 687, 139 Pac.
988; *Gillum v. Anglin,* 44 Okla. 684, 145 Pac. 1145; *Huston v. Scott,* 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N.
S.) 721.

Counsel further insist that no exceptions were taken
to the admission in evidence of the journal entry of
January 12, 1906, and also the journal entry of June 11,
1907. The record shows the following proceedings were
had in the absence of the jury:

"By the Court: Judgment entry dated January 12,
1906, signed on that date by Joseph A. Gill, Judge of the
United States Court for the Northern District of the In-
dian Territory, and heretofore offered in evidence and
heretofore read into the record, will permit this judgment
entry to be offered in evidence, and will overrule the ob-
jections heretofore made, and will allow the defendants an
exception, and this paper may be read to the jury and
the defendants and each of them may have an exception
the court holding that it is competent as tending to show
the age of the allottee, Allie Nash, from the standpoint
of the plaintiff at the time they were dealing with him in
this case, and at the time they took the deeds upon which
they rely upon in this case, all of which being prior to
July 27, 1908."

And when the judgment entry of June 11, 1907, was
offered, substantially the same proceedings were had and
occurred at that time, the court stating that the defend-
ants and each of them would be allowed an exception.
Thereupon the jury were returned into open court and the
trial proceeded, and the journal entries referred to were
read in evidence before the jury.

The position of counsel is that because, at the time
the court ruled that said journal entries were admissible

in evidence and stated that an exception would be allowed, plaintiffs in error did 'not formally reserve an exception, therefore no exception was in fact taken; and, further, that exceptions should have been taken in open court in the presence of the jury at the time the instruments were actually offered and admitted in evidence.

We cannot agree with this contention. The case relied upon in support of this view (*Bank of Cherokee v. Sneary*, 46 Okla. 186, 148 Pac. 157) does not sustain the position of counsel. It was there held that where the record fails to show any objection or exception to the instruction, by counsel, but did contain the statement that to the giving of these instructions and to each and every part thereof both plaintiff and defendant were allowed objections and exceptions, an objection to a particular paragraph of the charge would not be considered, for the reason that, treating the remark of the court as an exception by counsel, they are too general to bring in review a specific paragraph of the instructions. In the present case objection was made to the introduction of these judgments, which objections were overruled by the court, and at the time he overruled said objections the court announced that exceptions would be allowed to such ruling. This we think was sufficient to preserve the objection and present any question for review that might properly arise upon the ruling of the court thereon.

The remaining question is the admissibility of said judgments in evidence. In the former opinion it was held that these judgments were not admissible in this case, and upon a re-examination of this question we still entertain the same view. While counsel has devoted much time and space in his brief, and petition for rehearing, in

discussing this question, we are not cited to any authority directly in point upon the proposition presented. The precise question here is whether, in a guardianship proceeding under an application for approval of final report and discharge of the guardian, the court makes a finding that the minor was of age upon a certain date, and approves the report, and discharges the guardian, such finding by the court is conclusive as to that fact in this proceeding, being a controversy between conflicting claimants to the allotment of said minor, as a Cherokee freedman. We have been unable to find a parallel case, but think the proposition is analogous to that presented when an administrator is appointed for the estate of a third person, and it is held by the Supreme Court of the United States, in *Mutual Benefit Life Ins. Co. v. Tisdale,* 91 U. S. 238, 23 L. Ed. 314, and by the courts of a number of states, that the fact of such appointment having been made is not even evidence of the death of such person in another proceeding. In the course of the opinion the court says:

"The books abound in cases which show that a judgment upon the precise point in controversy cannot be given in evidence in another suit against one not a party or privy to the record. This rule is applied not only to civil cases, but to criminal cases, and to public judicial proceedings, which are of the nature of judgments *in rem.*"

A number of cases are reviewed by the court, and it is further said:

"A certificate of naturalization issues from a court of record when there has been the proper proof made of a residence of five years, and that the applicant is of the age of 21 years, and is of good moral character. This certificate is, against all the world, a judgment of citizen-

ship, from which may follow the right to vote and hold property. It is conclusive as such; but it cannot, in a distinct proceeding, be introduced as evidence of the residence or age at any particular time or place, or of the good character of the applicant. *Campbell v. Gordon,* 6 Cranch, 176 [3 L. Ed. 190]; *Stark v. Insurance Co.,* 7 Cranch, 420 [3 L. Ed. 391]."

This case was followed by the same court in *Humes v. Scruggs et al.,* 94 U. S. 22, 24 L. Ed. 51. See, also, 2 Van Fleet's Former Adjudication, sec. 518.

In a note to the case of *Mutual Benefit Life Ins. Co. v. Tisdale, supra,* are cited the cases in support of the proposition stated therein.

If, then, the granting of letters testamentary and of administration upon the estate of a third person is not evidence in any other proceeding between different parties as to the death of such third person, or the issuance of letters of naturalization is not evidence of the age of the person therein named, even when it is necessary for the court to determine the age of such person before issuing the same, we can see no good reason why a different rule should apply in the present case. When the court approved the final report of the guardian and discharged him, these facts were conclusive upon the world, that is, that his final report had been approved and that he had been discharged as guardian. The mere fact that in making this order it became necessary for the court to consider other collateral matters does not make these other matters conclusive in this action, or even admissible in evidence as tending to prove such facts. If the rule were as contended, it would be possible to obtain valid title to the lands of Indian minors prior to their reaching majority by procuring a judgment from the county court de-

claring the minor to be of age. This cannot be done, for the county court cannot in a guardianship proceeding decree that a minor has attained his majority when in fact he is still an infant, so as to confer upon him the rights to sell his allotted lands prior to having reached the age required by the acts of Congress to authorize such conveyance.

The second petition for rehearing is therefore overruled.

All the Justices concur.