## JAMES et al. v. HUNTER.

No. 28567.   Oct. 11, 1938.

Rehearing Denied Nov. 15, 1938.

A. C. Markley, for plaintiffs in error.

L. A. Winans, for defendant in error.

DAVISON, J.   This action to quiet title is presented to this court on appeal from the district court of Stephens county, Okla. It was instituted on the 17th day of April, 1937, by W. G. Hunter, as plaintiff, against Mary J. James et al., as defendants.

The land involved was allotted to Joseph James, a 15-year-old half-blood Chickasaw Indian duly enrolled as such. The allottee died in 1905, at the age of 18, without lineal descendants and at a time when Mansfield's Digest of the Statutes of Arkansas was in force in the Indian Territory by Act of Congress. He was survived by his father, Wilson H. James, a full-blood member of the Chickasaw Tribe (enrolled opposite No. 3348), and his mother, Mary J. James, enrolled as an intermarried white citizen of the Chickasaw Nation.

The plaintiff, W. G. Hunter, claims title through mesne conveyances from the father of the allottee, who is now deceased, and who in 1915 conveyed or purported to convey all of said lands by warranty deed duly approved by the county court of Pittsburg county, Okla.

The defendants Moses James and others are claiming as the asserted heirs of the mother.

The trial court decided the controversy in favor of the plaintiff, finding his possession and that of his predecessors in interest to have been open, notorious, and adverse for a period of more than 15 years prior to the institution of this litigation and also determining that the father of the deceased minor allottee was the sole and only heir of the deceased minor allottee to the exclusion of the intermarried white mother and her heirs.

The defendants present the case on appeal appearing herein as plaintiffs in error.   Our continued reference to the parties will be by their trial court designation.

The defendants urge, in substance, that the right of the parents to inherit the allotted lands of a deceased child under the provisions of Mansfield's Digest (sec. 2531), which was then in force in Indian Territory, depended upon their citizenship in the tribe rather than the quantum or existence of Indian blood in their veins. The arguments advanced in support of their position have a strong appeal to logic and and might influence the judgment of this court were it not for the fact that the precise question has been long since decided contrary to their position.   In Gillum v. Anglin, 44 Okla. 684, 145 P. 1145, this court decided that:

"Upon the death of mixed-blood minor children of the Choctaw Tribe of Indians, the fee in their allotments ascends to the parent of tribal blood, and not to the parent who has become a citizen of the tribe by virtue of an intermarriage."

To the same effect see Stalcup v. Mullen et al., 49 Okla. 543, 153 P. 868.

The defendants contend that a distinction should be made between the case at bar and Gillum v. Anglin, supra, on the theory that the decision in that case proceeded on the assumption that H. L. Gillum, the intermarried white involved in that case, was a noncitizen.   It is true that such reference was made to Gillum in the body of the opinion.   However, immediately thereafter he was alluded to as an "intermarried citizen."   Obviously the reference

to him as a "noncitizen" was not literally correct and was used in a loose sense to distinguish citizens of the tribe other than intermarried whites. Admittedly, the fact that the cited case involved a Choctaw allottee while the case at bar relates to a Chickasaw allotment does not create the basis of a legal distinction.

The decision in the Gillum v. Anglin Case having been the established law for some 23 years, we regard it as a rule of property which should not now be disturbed.

By reason of our conclusion on the point discussed, it is unnecessary to consider the statute of limitation.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, and HURST, JJ., concur. CORN and GIBSON, JJ., absent.